Joseph T. MURPHY et al.

v.

The ZONING BOARD OF REVIEW OF the TOWN OF SOUTH KINGSTOWN et al.

No. 2007–51–M.P.

Supreme Court of Rhode Island.

Nov. 18, 2008.

Karen R. Ellsworth, for Plaintiff.

Archibald B. Kenyon, Wakefield, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This case came before the Supreme Court on the petition for certiorari filed by Edward and Teresa Timpson seeking review of a Superior Court judgment that reversed a decision of the Zoning Board of Review of the Town of South Kingstown and ruled that the Timpsons' lot fronting Ministerial Road in South Kingstown is an illegal nonconforming lot under the zoning ordinance and subdivision regulations of the Town of South Kingstown.

This case came before the Supreme Court for oral argument on September 23, 2008 pursuant to an order directing the parties to show cause as to why the issues raised in this petition should not be summarily decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown. Because we hold that the

Timpsons' Ministerial Road property has at all times since the date of its creation been an illegal nonconforming lot, we affirm the judgment of the Superior Court.

## Facts and Travel

On October 20, 1992, William E. Bassett subdivided a 9.53–acre parcel of land fronting Ministerial Road in South Kingstown, otherwise known as lot No. 45 on Tax Assessor's Map No. 61; he thereby created two lots by deed. No plat was prepared or recorded, and no planning board or planning department review or approval took place. One lot, which continued to be designated as lot No. 45, was deeded to Ministerial Realty, Inc. The other lot was designated as lot No. 64 on Tax Assessor's Map No. 61. Lot No. 64, which is the subject of this petition, consists of 5.22 acres.

The ownership of lot No. 64 passed from Mr. Basset through several other persons between October 20, 1992 and June 24, 2004. On the latter date, Mr. and Mrs. Timpson purchased lot No. 64.

The respondants, Joseph T. and Jacqueline A. Murphy, reside in a home located on lot No. 43 on Tax Assessor's Map No. 61; their lot is directly to the east of lot No. 64. On October 4, 2004, the Murphys' counsel sent a letter to Russell W. Brown, the South Kingstown Zoning Enforcement Officer/Building Official, asserting that lot No. 64 "does not meet the dimensional requirements for developmental purposes."

In apparent response to the letter from the Murphys' counsel, in a letter dated February 8, 2005, Mr. Brown advised the Timpsons that "the lot/parcel of land you purchased * * * was and still is an illegal zoning lot when it was created by deed * * * and recorded in the Land Evidence Records of the Town of South Kingstown on October 20, 1992 * * *."

At all times pertinent to this appeal, lot No. 64 was zoned R–80 under the zoning ordinance for the Town of South Kingstown. Lots within a R–80 district must be at least 80,000 square feet in size. Lot No. 64 has always contained in excess of 80,000 square feet. Nevertheless, as stated in his letter of February 8, Mr. Brown concluded that Section II(O) of the subdivision regulations of the Town of South Kingstown required the exclusion of wetlands from any calculation of land suitable for development. Accordingly, Mr. Brown advised the Timpsons that lot No. 64 did not meet the 80,000–square–foot dimensional requirement for an R–80 district. On February 17, 2005, the Timpsons timely appealed Mr. Brown's decision to the Zoning Board of Review of the Town of South Kingstown (the board).

At a duly noticed hearing of the board on April 20, 2005, Mr. Brown testified that it was his conclusion that lot No. 64 "was illegally created under the subdivision regulations of the town"; he based his conclusion on the fact that most of the land in question was "unsuitable for development." He stated that land unsuitable for development may not be taken into account when calculating the area of a lot for the purpose of determining if the lot complies with the minimum square-footage requirement. Mr. Brown further testified that, at the time of his investigation in 2004, *lot No. 64 contained only approximately 30,-000 to 40,000 square feet of dry, buildable land.* He conceded that he did not know how much of the property would have been suitable for development in 1992, when lot No. 64 was created.

The Murphys then presented the testimony of an expert, Christopher Mason, the president and principal scientist of an environmental consulting firm located in Scitu-

ate, Rhode Island.[1] Mr. Mason testified that he had visually evaluated lot No. 64 from public roads and that he had also researched the extent of wetlands on the property in 1992. Mr. Mason testified that, in the process of estimating the extent of wetlands on lot No. 64 in 1992, he used a number of government reports and surveys, including Rhode Island Geographic Information System (GIS) mapping; aerial photography; and the Rhode Island Department of Agriculture's soil survey documentation. Mr. Mason concluded that, "based on the soil survey, the wetland mapping, [his] inspection of aerial photographs and [his] inspection of the site more recently," it was his opinion that since 1992 "the wetlands have been essentially in place on the lot over the entire northern portion of the lot down to * * * two to three hundred feet from [lot No. 64's] southern border."

On June 22, 2005, the board reconvened to continue consideration of the matter. Russell Brown was recalled as a witness. Mr. Brown confirmed that he relied exclusively on Section II(O) of the South Kingstown subdivision regulations in concluding that lot No. 64 did not meet the area requirements and was an illegal zoning lot. After closing arguments, the hearing was closed, and the board took the matter under advisement.

On July 20, 2005, the board unanimously voted to overturn Mr. Brown's decision

concerning the Timpsons' property. In its decision, the board opined that lot No. 64 was a legal nonconforming lot of record because, at the time of lot No. 64's creation in 1992, the zoning ordinance did not expressly state that a lot had to conform to the subdivision regulations. The board noted that the lot met the literal requirements of the zoning ordinance by virtue of the fact that it contained more than 80,000 square feet. The board further indicated that it could not conclusively determine whether or not lot No. 64 had contained 80,000 square feet of land suitable for development in 1992.

In addition, the board cited § 205A of the South Kingstown Zoning Ordinances, which provides that a lot with less than the required area may nevertheless be considered buildable if it was (1) shown on a plat or duly recorded deed prior to the effective date of the ordinance, (2) met minimum zoning requirements in effect at the time the lot was recorded, and (3) did not abut other land of the same owner on March 29, 1976 or at any time after the lot was rendered substandard by virtue of the zoning ordinance. The board therefore concluded that § 205A applied to the instant case and that lot No. 64 was a buildable lot.

■ Mr. and Mrs. Murphy timely appealed the board's decision to the Washington County Superior Court.[2] Exercis-

---

1. The Murphys live within 200 feet of lot No. 64 and were, therefore, given written notice of the date, time, and place of the public hearing and the nature and purpose of the hearing pursuant to G.L.1956 § 45–24–53(a)(2).

2. Section 45–24–69 vests the Superior Court with jurisdiction to review a zoning board's decisions. Section 45–24–69(d) provides:

   "The [Superior Court] shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on

questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

"(1) In violation of constitutional, statutory, or ordinance provisions;

"(2) In excess of the authority granted to the zoning board of review by statute or ordinance;

"(3) Made upon unlawful procedure;

ing jurisdiction over the case pursuant to G.L.1956 § 45–24–69(d), and after conducting a hearing, the Superior Court issued a decision on December 6, 2006, overturning the decision of the zoning board of review. The Superior Court held that the building official properly applied Section II(O) of the subdivision regulations in determining that lot No. 64 is an illegal nonconforming lot; it further held that "the Board's finding that Brown improperly applied Section II(O) of the subdivision regulations was clearly erroneous" as a matter of law.

The Superior Court's ruling was consistent with Mr. Brown's interpretation of the 1992 zoning ordinance as requiring conformity with the subdivision regulations in certain instances. In so holding, the court rejected the Timpsons' argument that the South Kingstown Planning Board did not have authority to enact the regulation at issue. Rather, it held that "the Planning Board had clear statutory authority to enact Section II(O) of the subdivision regulations pursuant to [G.L.1956] chapter 23 of title 45 and that such authority is consistent with the broad legislative mandate explicit in the statute."

The Superior Court further held that the board's disregard of the undisputed testimony of the Murphys' expert witness concerning the presence of wetlands on the property in 1992 was "clearly erroneous in view of the reliable, probative, and substantial evidence, as well as an abuse of discretion." The Superior Court therefore reversed the board's decision and concluded that lot No. 64 did not and does not satisfy the area requirement of 80,000 square feet for an R80 district and thus was an illegal lot of record.

The Timpsons timely filed the instant petition for certiorari.

## Standard of Review

■ In reviewing a case that is before us pursuant to a writ of certiorari, we will "limit our review * * * examining the record to determine if there are any errors of law." *Brown v. State*, 841 A.2d 1116, 1121 (R.I.2004). We must "scour the record to discern whether any legally competent evidence supports the lower tribunal's decision * * *." *Kent County Water Authority v. State (Department of Health)*, 723 A.2d 1132, 1134 (R.I.1999). "If legally competent evidence exists to support that determination, we will affirm it unless one or more errors of law have so infected the validity of the proceedings as to warrant reversal." *Id.* In a zoning case, this Court will "not reverse a Superior Court justice's decision unless it can be shown that the justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *OK Properties v. Zoning Board of Review of Warwick*, 601 A.2d 953, 955 (R.I.1992) (in-

---

"(4) Affected by other error of law;
"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The Murphys had standing to file the appeal pursuant to § 45–24–69(a). Section 45–24–69(a) provides in pertinent part:
"An aggrieved party may appeal a decision of the zoning board of review to the [S]uperior [C]ourt of the county in which the city or town is situated by filing a complaint

stating the reasons of appeal within twenty (20) days after the decision has been recorded and posted in the office of the city or town clerk."
An aggrieved party is defined as:
"(i) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town; or
"(ii) Anyone requiring notice pursuant to this chapter." Section 45–24–31(4).

ternal quotation marks omitted); *see also Lischio v. Zoning Board of Review of North Kingstown*, 818 A.2d 685, 690 (R.I. 2003). "This [C]ourt does not weigh the evidence; instead we review the record to determine whether substantial evidence existed to support the Superior Court justice's decision." *OK Properties*, 601 A.2d at 955.[3]

## A

### Subdivision Regulation Section II(O)

■ The first issues to be addressed are the interpretation of and the interrelationship between the South Kingstown zoning ordinance and Section II(O) of the town's subdivision regulations. "When interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes." *Ruggiero v. City of Providence*, 893 A.2d 235, 237 (R.I. 2006). "If the statute is clear and unambiguous, we must enforce it as written by giving the words of the [ordinance] their plain and ordinary meaning." *Id.* "The construction of a regulation is a question of law to be determined by the court. The principles or rules of statutory construction apply to administrative regulations." 2 Am.Jur.2d. *Administrative Law* § 245 at 221 (2004); *see also Arnold v. County of Nassau*, 252 F.3d 599, 602 (2nd Cir.2001) ("[W]here * * * a decision turns on the meaning of a word in a statute or regulation, the decision is one of law which must be made by the court.") (internal quotation marks omitted); *Diamond v. Marcinek*, 226 Conn. 737, 629 A.2d 350, 355 n. 8 (1993) ("Our rules of statutory construction apply to administrative regulations.") (internal quotation marks omitted); *Vector Marketing Corp. v. New Hampshire Department of Revenue Administration*, 156 N.H. 781, 942 A.2d 1261, 1263 (2008) ("We use the same principles of construction in interpreting administrative rules as we use with statutes.").

By its clear and unambiguous language, Section II(O) of the South Kingstown Subdivision Regulations applied to lot No. 64 when that lot was created in 1992. The subdivision regulations in effect on October 20, 1992 defined "subdivision" as "[t]he division of a lot, tract or parcel of land into two (2) or more lots, tracts, parcels or other division of land * * *." *South Kingstown Subdivision Regulations*, Section II(C) (1977, as amended May 27, 1986).[4] Section II(O) specifically states that "[w]etlands * * * may not be considered as part of the land area required per lot in a subdivision." *South Kingstown Subdivision Regulations* Section II(O) (adopted Dec. 10, 1985). Reading its plain and ordinary language in a straightforward manner, it is clear that Section II(O) requires that wetlands not be included in the dimensional measurement of a lot created by subdivision.

■ The Timpsons contend that the enactment of Section II(O) of the subdivision regulations by the South Kingstown Planning Board was *ultra vires* and that said regulation was, for this reason, invalid as of October 20, 1992. It is clear, however, that the statewide subdivision statute, originally adopted in 1956 and reenacted in 1991, clearly granted the South Kingstown

---

**3.** "Substantial evidence * * * means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." *Caswell v. George Sherman Sand & Gravel Co.*, 424 A.2d 646, 647 (R.I.1981).

**4.** This definition parallels Rhode Island's statutory definition of "subdivision" in effect in 1992. *See* G.L.1956 (1991 Reenactment) § 45–23–1(a).

Town Council the authority to empower the local planning board to enact subdivision regulations.[5] In 1957, the South Kingstown Town Council did, in fact, grant the town planning board the authority to promulgate regulations "for the control of the subdivision of land." *Amendment to the Zoning Ordinance of the Town of South Kingstown*, Section X–A (1957). Thus, the planning board's adoption of Section II(O) was well within its authority to promulgate regulations pertaining to the subdivision of land.

■ Although Section II(O) of the subdivision regulations created a more restrictive standard for lot composition than existed under the zoning ordinance then in effect, the zoning ordinance itself provided guidance as to which standard should prevail. The zoning ordinance provided:

"In their interpretation and application, the provisions of this Zoning Ordinance shall be construed to be minimum requirements for the promotion of the public health, safety, morals and general welfare. *Wherever the requirements of this Ordinance are at variance with the requirements of any other lawfully adopted rules, regulations, ordinances, deed restrictions or covenants, the more restrictive or those imposing the higher standards, shall govern." South Kingstown Zoning Ordinance*, § 1904 (1976) (emphasis added).

5. The statute, in pertinent part, authorized "the town council of any town * * * by ordinance to authorize and empower the plan commission to adopt, modify, and amend rules and regulations governing and restricting the platting or other subdivision of land in the city or town, and to control the subdivision of land pursuant to those rules and regulations." Section 45–23–2.

Such regulations could also provide "for the minimum width, depth, and area of lots." Section 45–23–6(a).

In view of the just-quoted language, the Superior Court was correct when it stated that "[a]s the more restrictive standard, Section II(O) of the subdivision regulations should be applied to the calculation of lot size."

**B**

**Expert Testimony before the Board**

■ The Timpsons also contend that the Superior Court erred in crediting the expert testimony of the Murphys' wetlands expert (Christopher Mason). The board had effectively rejected Mr. Mason's testimony in deciding that it could not conclusively determine whether or not there were 80,000 square feet of buildable land in lot No. 64 in 1992. The Timpsons assert that it was the board's prerogative to make credibility determinations concerning expert witnesses and that the Superior Court improperly substituted its judgment for that of the board.

■ While it is generally true that "there is no talismanic significance to expert testimony [and it] may be accepted or rejected by the trier of fact," *Restivo v. Lynch*, 707 A.2d 663, 671 (R.I.1998), it is also true that, if expert testimony before a zoning board is competent, uncontradicted, and unimpeached, it would be an abuse of discretion for a zoning board to reject such testimony. *See Bonitati Bros., Inc. v. Zoning Board of Review of Cranston*, 99 R.I. 49, 55, 205 A.2d 363, 366–67 (1964).[6]

Section 45–23–21 required that "[i]n construing the provisions of this chapter and any ordinance passed hereunder, all courts shall consider the same most favorably to the plan commission, it being the intent hereof to give to the plan commission the fullest and most complete powers possible concerning the matters provided for herein."

6. It should go without saying that expert testimony proffered to a zoning board is not somehow exempt from being attacked in several ways. *See, e.g., East Bay Community*

Significantly, the record in this case discloses that Mr. Mason's expert opinion was based on numerous government studies and photographs from the years before and after 1992. Neither counsel for the Timpsons nor the members of the board themselves contradicted or impeached Mr. Mason's testimony. No member of the zoning board commented on the credibility of Mr. Mason's testimony at any time during the hearing. It is our opinion that the Superior Court correctly ruled that the zoning board's rejection of Mr. Mason's undisputed expert testimony was clearly erroneous. Taking into consideration Mr. Mason's testimony, it is clear that lot No. 64 contained less than 80,000 square feet of land suitable for development in 1992 and therefore did not satisfy the requirement for a lot in an R–80 district.

## C

### The Applicability *Vel Non* of an Exception Authorized by the Ordinance

■ The Timpsons argue that lot No. 64 is buildable pursuant to § 205(A) of the South Kingstown Zoning Ordinances, which provides for an exception to the general requirements of the zoning scheme when certain specified conditions exist. Section 205(A) reads in pertinent part as follows:

"A lot * * * which is less than required by Section 401 may be considered buildable for single household residential purposes regardless of the lot width or lot area, provided such lot or parcel of land

was (i) shown on a plat or on a deed duly recorded prior to the effective date of this Ordinance, and (ii) *provided that at the time of recording the lot or parcel of land so created conformed in all respects to the minimum requirements of the Zoning Ordinance in effect at that time,* and (iii) said lot or parcel of land did not abut other land of the same owner on March 29, 1976 or at any time after such lot or parcel of land was rendered substandard by the provisions of any prior Zoning Ordinance." (Emphasis added.)

The Superior Court correctly held § 205(A) to be inapplicable due to the fact that lot No. 64 did not, in fact, meet the minimum zoning requirements for a buildable lot in effect at the time it was recorded because it did not contain 80,000 square feet of land suitable for development, as required for an R–80 district. As already discussed, § 1904 of the South Kingstown Zoning Ordinances required application of the standards of the subdivision regulations in calculating the land suitable for development; the application of those standards rendered lot No. 64 legally unbuildable.

For the reasons stated herein, the judgment of the Superior Court is affirmed. The record may be remanded to the Superior Court with our decision endorsed thereon.

---

*Development Corp. v. Zoning Board of Review of Barrington,* 901 A.2d 1136, 1157 (R.I.2006) (countenancing a challenge to expert testimony on the basis of the personal knowledge and observations of the members of the zoning board so long as there are adequate disclosures on the record); *Restivo v. Lynch,* 707 A.2d 663, 671 (R.I.1998) (noting that expert

testimony can be discredited through examination of the expert by members of the zoning board or by counsel for an interested party).

In this case, however, the record is devoid of any indication that Mr. Mason's expert opinion was attacked or impeached. Such being the case, that expert testimony necessarily must carry the day.