[1] Stephen MacGillivray's name was misspelled as "Steven McGilvery" in the Complaint.
 DECISION
Before the Court is an appeal from a decision ("Decision") of the Zoning Board of the Town of Middletown ("Board"), which granted Michael and Carol Troy ("Troys") a dimensional variance. Appellant Peter M. Cosel ("Appellant"), an abutter within 200 feet of the Troys' property, seeks reversal of the Board's Decision. Jurisdiction of the Appellant's timely appeal is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
The Troys are the owners of real property located at 160 Tuckerman Avenue in Middletown, legally described as Lot 44, Tax Assessor's Plat 116SE ("Property"). (Compl. ¶ 2.) The Property, which is identified as a single family home, is located in an R-10 zoning district. (Decision at 1.) The Troys' Property is dimensionally nonconforming in several respects. Although a minimum lot size area of 10,000 square feet is required, the Property only *Page 2 
has 7375 square feet of lot area. Id.; Middletown Zoning Ordinance § 603. Additionally, the Troys have frontages[2] of 80 and 94 feet, though 100 feet is required; a nonconforming front yard set back of 5 feet 6 inches where a front yard set back of 25 feet is required; and a nonconforming west yard set back of 12 feet where 15 feet is required. (Decision at 1-2.) Lastly, the Property has a lot coverage of 33% where 25% is the maximum percentage allowed. Id. at 2.
In December 2008, the Troys filed a petition for a dimensional variance in order to demolish an existing detached, single-story garage and to construct an attached two-story garage. (Dec. 9, 2009 Petition for Variance.) The requested alteration would result in a set back of 8 feet by 11 and one-half inches where 25 feet is required and would result in a lot coverage of 37.5% where only 25% coverage is permitted. Id.; Tr. 2/24/09 at 9. The Board held properly noticed public hearings regarding the variance petition on February 24, 2009 and March 24, 2009.
At the Board's February and March 2009 hearings, Ron Alose testified on behalf of the Troys' petition. Mr. Alose, who has worked in the architectural design industry for over twenty (20) years, indicated that he designed the proposed plan. (Tr. 2/24/09 at 6.) He testified that the Troys' Dutch Colonial residence was built in the 1930s. Id. at 7. As a result, Mr. Alose asserted that the home is considered outdated by today's standards due to small bedrooms, inadequate closet space, and an inadequate number of bathrooms. See id. Mr. Alose stated that the proposed changes would be "to add a master bedroom/bathroom suite that would be in keeping with today's standards, decent closet space, and the addition of a garage space below it." *Page 3 Id. According to Mr. Alose, the proposed garage development would be 3 feet by 5 inches in from the street and 3 feet farther in from the back lot line than the existing garage, which would thereby reduce two of the set back nonconformities. Id. at 9. Although other alternatives were suggested (including the Appellant's recommendation that the proposed garage be constructed behind the house), Mr. Alose did not believe any alternate designs would be feasible. Id. at 9-10. Ultimately, Mr. Alose concluded that the proposal would not alter the general character of the surrounding area because of the scale of the addition and his intent to "keep[] within the architectural style of many of the homes that are in that area." Id. at 11. Furthermore, Mr. Alose opined that the dimensional variance was the least relief necessary for the Troys. Id. at 10.
George Durgin also testified on behalf of the Troys. The Board recognized Mr. Durgin as an expert witness on real estate. (Decision at 3; see also Tr. 2/24/09 at 19.) Mr. Durgin testified that he studied the Troys' petition to determine whether it met the criteria for a dimensional variance. (Tr. 2/24/09 at 19.) Mr. Durgin believed the proposed development would not alter the general character of the surrounding area because many of the homes in the area also had been "renovated and enlarged to meet contemporary living standards" and that the Troys' plans were "in conformance with other design standards in the neighborhood."Id. at 20-21. Mr. Durgin testified that the proposal complied with the intent of the Middletown Zoning Ordinance because the Property was situated in an R-10 zone, which "allows for the greatest amount of density as far as residential use goes" and was platted prior to the Middletown Zoning Ordinance.Id. at 22. With regard to the Middletown Comprehensive Community Plan, Mr. Durgin testified that the R-10 zone was intended for "high-density usage" and that such usage was intended to continue "for the foreseeable future." Id. at 22-23. Lastly, Mr. Durgin asserted *Page 4 
that the Troys' hardship was due to the unique characteristics of the structure, given that the home was "outdated for contemporary lifestyles" and that the proposed changes would not have a direct impact on neighboring properties because two nonconforming set backs would be reduced. Id. at 24.
A number of nearby property owners objected to the Troys' proposed plans. See id. at 28-39. Specifically, the Appellant testified that he owned a unit in a condominium which was located less than 200 feet from the Troys' Property. Id. at 33. He claimed that the Troys had already been granted a variance to add "a very large front porch" totaling approximately 600 square feet.Id. at 35. As a result, the Appellant believed the additional expansion would interfere with visibility, traffic, pedestrians, and cause additional water runoff problems.[3] Id. Ultimately, the Appellant asserted that the addition would "definitely chang[e] the character of the neighborhood" and asked the Board to deny the petition. Id. at 36. Following the Appellant's testimony, one of the Troys' Tuckerman Avenue neighbors testified in favor of the petition. Id. at 39-43. By the conclusion of the February 24, 2009 hearing, the Chairman of the Board decided that the matter would be continued so that he and other members of the Board could individually "look at the property, and make a decision at the next regularly-scheduled meeting."Id. at 46.
Prior to the start of the next hearing date on March 24, 2009, the Troys submitted revised plans in which they sought less relief than was initially requested. (Tr. 3/24/09 at 4.) The new changes reduced the garage addition "from a two-car garage to a one-car garage, thereby reducing the amount of additional lot coverage" that was requested. Id. Additionally, the *Page 5 
changes would remove a 150 square foot patio deck on the southeast corner of the home. Id. In sum, the revised plans would reduce lot coverage to 32.6 % (which was initially requested to be increased to 37.5%) and would eliminate the west set back nonconformity. Id. at 4-7.
Before the close of the March 2009 hearing, Michael Troy testified in support of his petition. He testified that he and his wife purchased the Property in 2000 and that collectively, they own homes in New Jersey and Florida, in addition to the Property at issue in this case. Id. at 10-11. Mr. Troy asserted that he had no intention to use the space above the proposed garage as a rental apartment or as an apartment for a family member and would be willing to stipulate that the Property "will remain a single family dwelling." Id. at 11-13.
At the conclusion of the March 24, 2009 hearing, the Board voted 5-0 to grant the Troys' petition on the condition "that it be utilized only as a single-family residence." Id. 37-38, 40. The Board issued a written decision on May 4, 2009, granting the Troys' petition. On May 9, 2009, the Appellant timely filed an appeal to this Court for review.
 II Standard of Review
Rhode Island General Laws § 45-24-69(a) provides this Court with the specific authority to review decisions of town zoning boards. This Court's review is governed by § 45-24-69(d), which provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions; *Page 6 
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Judicial review of an administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. R.I. State LaborRelations Bd., 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977);see also Mauricio v. Zoning Bd. of Review ofPawtucket, 590 A.2d 879, 880 (R.I. 1991). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Cohen v. Duncan, 970 A.2d 550, 561 (R.I. 2009) (quoting Monforte v. Zoning Bd. of Review of E.Providence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962)). Accordingly, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings."New England Naturist Ass'n, Inc. v. George, *Page 7 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v.International Ass'n of Fire Fighters, AFL-CIO, Local 1589,119 R.I. 506, 380 A.2d 521 (1977)). Thus, this Court's review of a zoning board's factual findings is undertaken to ensure that a reasonable mind might accept them as adequate to support a conclusion. See Lischio v. Zoning Bd. of Review of N.Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003); Caswell,424 A.2d at 647.
 III Analysis
The Appellant bases his appeal of the Board's Decision essentially on two main grounds, arguing that (1) the Board's Decision is not supported by competent evidence and (2) the Troys failed to present sufficient evidence to support the granting of the petition for dimensional relief. The Court will address both arguments in turn.
 A The Board's Decision
Pursuant to § 45-24-61(a), a Zoning Board must issue a written decision which affirms or denies a request for zoning relief. That decision must include "all findings of fact and conditions, the vote of each participating member, and the absence of a member or his or [her] failure to vote." Id. "When the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper [under] the circumstances." Bernuth v. Zoning Bd. of Review of Town ofNew Shoreham, 770 A.2d 396, 401 (R.I. 2001).
The Appellant claims that the Board's Decision to grant the variance is not supported by credible evidence because there were no facts in the record to explain why the interior of the home could not be altered. After reviewing the Board's Decision, this Court is satisfied with the findings of fact that provide the basis for the petition's approval. *Page 8 
In addition to the testimony presented at two hearing dates, the Board made numerous findings of fact as to the variance requested. Most notably, the Board asserted that the proposed alteration would make the Property "more conforming with the requirements of the zoning ordinance by reducing the existing lot coverage,reducing a front yard set back nonconformity, andeliminating a side set back nonconformity." (Decision at 5-6.) (Emphasis added.) Additionally, the Board found that the Troys' addition would not increase any dimensionally substandard condition at the property, that no competent evidence was presented which demonstrated that the proposed changes would increase drainage or runoff, and that the Board believed the Troys had taken into consideration the concerns of the Board and their neighbors by revising their plans to create a more conforming Property.Id. at 6.
Therefore, the Court finds that the Board's Decision complies with § 45-24-61(a) because it sets forth in sufficient detail the findings of fact that the Board relied on in granting the Troys' request for a dimensional variance. Thus, the Court possesses the necessary information to reasonably evaluate the Board's Decision and can reach the substantive merits of the instant appeal.See Bernuth, 770 A.2d at 401 (holding a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions so that such decisions may be susceptible of judicial review).
 B Sufficient Evidence
Section 45-24-31(61)(ii) defines a dimensional variance as
 "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be *Page 9 
more profitable or that a structure may be more valuable after the relief is granted are not grounds for relief."
In order to obtain a dimensional variance, Middletown Ordinance § 903(A) sets forth the four-prong standard which an applicant must satisfy to obtain relief:
 (1) "That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area and is not primarily due to a physical or economic disability of the applicant;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan upon which this Ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."[4] *Page 10 
To satisfy the first prong, the Troys must demonstrate "that the hardship the applicant would suffer if the dimensional relief is not granted amounts to more than a mere inconvenience."Lischio, 818 A.2d at 691; see also Middletown Ordinance § 903(A)(7) (stating that the hardship which will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience). The Appellant argues that the Troys failed to present sufficient evidence that their hardship amounted to more than a mere inconvenience. In support of this argument, the Appellant contends that although the Troys' experts concluded that the Property was considered "outdated" by today's standards, such conclusion provides no evidence to substantiate that if their petition were denied, it would amount to more than a mere inconvenience.
In the instant case, the Board found that sufficient evidence existed to support the Troys — and their experts' — claim that the property was outdated and inadequate, which would amount to more than a mere personal inconvenience. Specifically, this Court notes that immediately prior to a unanimous decision to grant the Troys' petition, one member of the Board stated:
 I think in this particular case, there does seem to be a hardship that's beyond a mere inconvenience, in that this house is antiquated. There is no master bedroom. I do think that they have chosen the least relief possible in order to correct those obvious problems. (Tr. 3/24/09 at 38-39.)
Additionally, the Board decided that:
 [t]he hardship that the Troys suffer results from the structure being inadequate and outdated . . . on a [sic] undersized corner lot that pre-exists the Zoning Ordinance and which requires two front set backs, which together result in an inability to make adequate use of the property. . . . (Decision at 6.) *Page 11 
"Whether a variance can or should be granted involves several problems, but the existence of the ancient structure on the applicant's land may be regarded as a unique circumstance." 83 Am. Jur. 2d Zoning Planning § 795 (2003) (citingMessinger v. Zoning Bd. of Review of Town of E. Providence,81 R.I. 159, 99 A.2d 865 (1953)). In Messinger, the Supreme Court held that a variance was properly granted when the board "acted upon its own knowledge of the conditions existing in the neighborhood as evidenced by a recognition of the fact that applicant's house is outmoded as a single-family dwelling because of its size."[5] Messinger, 81. R.I. at 162, 99 A.2d at 866. Here, the Court notes that the Board relied not only on the representations of a Board member before voting, but also acknowledged the unique characteristics of the Property (i.e., an antiquated home on an undersized lot which predates the Middletown Zoning Ordinance). Accordingly, the Court finds that substantial evidence supports the Board's conclusion as to the first prong of the standard.
To satisfy the second prong, the Troys must demonstrate that the alleged hardship was not the result of any prior action on the part of the applicant and does not result primarily from the applicant's desire for financial gain. The Appellant referenced a prior variance, which permitted the Troys to construct a 596 square foot front porch on the front of their home.
Our Supreme Court has ruled that a self-created hardship "is most properly employed where one acts in violation of an ordinance and then applies for a variance to relieve the illegality."Sciacca, 769 A.2d at 584. Here, there is no evidence which establishes that the *Page 12 
Troys have violated the Middletown Zoning Ordinance and are now applying for a variance to relieve the illegality. Instead, the evidence suggests that the hardship is a result of the Troys' home being constructed prior to the Middletown Zoning Ordinance. According to the Board, the "hardship does not result from any prior action of the Troys, who bought the property in 2000, as the structure was built in the 1930s and the lot was platted before the Zoning Ordinance was enacted." (Decision at 7.) "It is well established that a failure to develop land before a zoning change should not be considered a self-created hardship." DeStefano v.Zoning Bd. of Review of Warwick,122 R.I. 241, 248, 405 A.2d 1167, 1171 (1979). In light ofDeStefano, it follows logically that a failure to develop landbefore a zoning ordinance is enacted should not be considered a self-created hardship. Further, the Troys' expert testified that the purpose of the addition was not to make the property "more valuable" or for other "economic reasons." (Tr. 2/24/09 at 11.) The Board accepted the expert's representation, concluding "the hardship does not result from any desire to realize greater financial gain. . . ." (Decision at 7.) Therefore, the Court finds that substantial evidence supports the Board's conclusion as to the second prong.
With respect to the third prong, the Troys must demonstrate that the requested relief will not alter the general characteristic of the surrounding area, and will not impair the intent or purpose of the Middletown Ordinance or the Middletown Comprehensive Community Plan. The purpose of the Middletown Zoning Ordinance is to (1) promote the public health, safety, and general welfare; (2) provide for a range of uses and intensities of use appropriate to the character of the town and reflecting current and expected future needs; and (3) provide for orderly growth and development. See Middletown Ordinance § 101(C). With respect to land use regulations, the primary objective of the Middletown Comprehensive Plan as it relates to the instant case is to establish a pattern of land use that considers environmental and historical characteristics of the *Page 13 
land as well as the overall impact on infrastructure. Seegenerally Middletown Comprehensive Community Plan, Land Use Element, ch. IX, at 380.
In cases where board members have traveled to the site, viewed the site, and made personal observations of the conditions at that site, these observations by the board members may "constitut[e] legal evidence capable of sustaining a board's decision . . ." so long as "such conditions and circumstances [are] disclosed in the record."Dawson v. Zoning Bd. of Review of the Town of Cumberland,97 R.I. 299, 303, 197 A.2d 284, 286 (1964) (citingZimarino v. Zoning Bd. of Review of the City of Providence,95 R.I. 383, 187 A.2d 259 (R.I. 1963)).
The record is clear that the Board viewed the Property before deciding to grant the Troys' request for dimensional relief. (See Tr. 3/24/09 at 4.) The Board's Decision makes specific reference to the "Board's view and personal knowledge of the area" before addressing the standards for granting dimensional variances. (See Decision at 6-7.) The Board relied on the Troys' two experts to conclude "that the granting of the requested variance will not alter the general character of the surrounding area, which is a densely developed residential area." (Decision at 7.) Lastly, the Board accepted the testimony of real estate expert George Durgin in concluding the granting of the requested variances would not impair the intent or purpose of the Zoning Ordinance or Comprehensive Plan. Id. It is well established that "if expert testimony before a zoning board is competent, uncontradicted, and unimpeached, it would be an abuse of discretion for a zoning board to reject such testimony." Murphy v. Zoning Bd.of South Kingstown, 959 A.2d 535, 542 (R.I. 2008). Although the Appellant suggests that the Troys' addition would interfere with visibility, traffic, and cause additional water runoff problems, the Board concluded there was "no competent evidence presented that the Troys' proposal would *Page 14 
increase drainage or runoff, or would impair traffic or fire safety." (Tr. 2/24/09 at 35; Decision at 6.) Accordingly, the Troys have satisfied the third prong.
Finally, to satisfy the fourth prong, the Troys had to demonstrate that the relief provided by the variance was the least relief necessary to alleviate their hardship. The Appellant argues that the Troys could make "reasonable interior modifications" to their property without any need for zoning relief. The burden rests with the applicant to demonstrate that the dimensional variance requested is, in fact, the least relief necessary. According to one source,
 The inquiry is not whether there are other available uses for the property, but whether the applicant can achieve the benefit of a permitted use through some means other than the variance. Accordingly, if the use is permitted, and the benefit sought cannot be achieved absent the grant of a variance, then the factor weights in favor of granting the variance. As such, applicants for an area variance should demonstrate that they have considered whether the desired result can be achieved without obtaining a variance. Failure to do so, weighs against the applicant and favors denial of the variance. Patricia E. Salkin, American Law of Zoning § 13:25 (5th ed. 2009)
The Board had before it probative evidence that the Troys' requested variance is the least relief necessary, based on the Board's reference to the "testimony of Ron Alose that a variety of other options were considered and none were [identified as] workable." (See Decision at 7; Tr. 2/24/09 at 9-10.) Additionally, the Court notes that the Troys willingly agreed to stipulate that the Property would be used only as a "single-family home," and the Board conditioned its Decision on that representation. (Tr. 3/24/09 at 11-13; 37-40.) Consequently, this Court finds that there is reliable, probative, and substantial evidence of record to support the Troys' assertion that the requested relief is the least relief necessary. *Page 15 
 Conclusion
After reviewing the entire record, this Court is satisfied that the Zoning Board had competent evidence before it to grant the Troys' request for a dimensional variance. The Court notes that the substantial rights of the Appellant have not been prejudiced. Accordingly, this Court affirms the May 4, 2009 Decision by the Zoning Board of Review of the Town of Middletown. Counsel for the prevailing party shall submit an appropriate order for entry.
[2] Because the Property is a corner lot with frontage on Tuckerman Avenue and South Crest Street, it is treated as having two front yard set backs and two side yard set backs. (See Decision at 1.)
[3] When asked by the Troys' counsel if he had any evidence of how the proposed addition would impact water runoff in the area, the Appellant stated that his opinion was based on his "visual observation of that neighborhood." (Tr. 2/24/09 at 36-37.) Additionally, the Appellant testified that he possessed no engineering degrees. Id. at 37.
[4] The standard set forth in § 903(A) of the Middletown Ordinance is substantially similar to G.L. 1956 § 45-24-41(c), which states:
 "In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
[5] The Court notes that the issue in Messinger was whether an exception or use variance was properly granted to permit the applicant to operate a funeral home from his residence.Messinger, 81 R.I. at 160, 99 A.2d at 865. Although the issue in this case involves a dimensional variance, our Supreme Court has held "the plain language of § 45-24-41(c) does not differentiate between the type of variance sought by the applicant; rather, it applies equally to requests for dimensional, as well as for use variances." Sciacca, 769 A.2d at 584. As previously indicated, § 45-24-41(c) is substantially similar to the applicable ordinance in this case, Middletown Ordinance § 903(A).
 *Page 1