OPINION
Justice Robinson,
for the Court.
At issue in this case is the legal propriety of a decision allowing Todd and Tina Sposato (the Sposatos) to keep four alpacas on their residential property in Hop-kinton (the property) as pets.[1] The petitioner, Amber Preston, filed a petition for issuance of a writ of certiorari, which this Court granted, seeking review of a Washington County Superior Court judgment, in which the Superior Court justice affirmed the decision of the Zoning Board of Review of the Town of Hopkinton (Zoning Board). The Superior Court justice classified the four alpacas as “pets” and accordingly declared that keeping them on the property located in an R-l zone was a permitted use. Ms. Preston contends that the Superior Court justice erred when he “suggested the keeping of alpacas as pets [is] an accessory use in an R-l zone.” With respect to the decision of the Zoning Board, Ms. Preston avers that the Zoning Board “exceeded its authority and abused its discretion when it made a decision personal to the Sposatos.”
For the reasons set forth in this opinion, we quash the judgment of the Superior Court. The record shall be remanded to the Superior Court with our decision endorsed thereon and with directions to remand the case to the Zoning Board of Review of the Town of Hopkinton.
*467 Facts and Travel
On May 23, 2011, the Zoning Officer for the Town of Hopkinton issued a notice of violation to the Sposatos for their being in violation of the Hopkinton Zoning Ordinance by virtue of the fact that they had four alpacas on their property located at 129 North Road in that town; it is undisputed that the Sposatos had four alpacas on their property. The Sposatos’ property is located in an R-l zone, and' it is approximately 45,000 square feet in size. Ms. Preston, the petitioner, resided in a single-family house at 131 North Road, which property abuts thé Sposatos’ property and is likewise located in an R-l zone.
The Zoning Officer’s notice of violation was predicated on his conclusion that alpacas are “farm animals” or “[l]ivestock” rather than “domestic animals” — rthe former being prohibited in an R-l zone in Hopkinton and the latter being permitted in such a zone.
In due course, the Sposatos appealed the Zoning Officer’s notice of violation to the Zoning Board, which conducted four hearings late in 2011 and early--in 2012. Then, on February 9, 2012, the Zoning Board issued a nine-page decision. By a majority vote, it overturned the Zoning Officer’s ruling and concluded that alpacas are “domestic animals.” Immediately thereafter, however, and by a separate vote, the Zoning Board imposed four “conditions” on the Sposatos with respect to the continued presence of alpacas on the property.[2] Those conditions read as follows:
“1. The dimensional setbacks for an R-l zone shall apply to the fencing and enclosures;
“2. The alpacas are to be kept one hundred (100) feet from wells;
“3. The number of alpaca shall not exceed four (4);
“4. The right to keep alpaca on this property does not run with the land; that is, if the Sposato’s [sic] sell this property the next owners are not permitted to keep alpaca.”[3]
A justice of the Superior Court affirmed the Zoning Board’s ruling in a written decision that was filed on January 27, 2014. Ms. Preston filed a petition for cer-tiorari on May 6, 2014, which this Court granted on April 17, 2015.
n
Standard of Review
In reviewing a case that is before us pursuant to a writ of certiorari, we will “limit our review * * * [to] examining the record to determine if there are any errors of law.” Murphy v. Zoning Board of Review of South Kingstown, 959 A.2d 535, 540 (R.I. 2008) (internal quotation marks omitted). This Court must “scour the record to discern whether any legally competent evidence supports the lower tribunal’s decision * * Id. (internal quotation marks omitted). “If legally competent evidence exists to support that determination, we will affirm it unless one or more errors of law have so infected the validity of the *468 proceedings as to warrant reversal.” Id. (internal quotation marks omitted).
Ill
Analysis
We need not discuss at any length the prolonged proceedings before the Zoning Board, which involved a good deal of witness testimony and disquisitions as to how alpacas should be classified under the Hopkinton Zoning Ordinance. The reason that we are free to pretermit such a discussion is that there is a glaring and fatal flaw in the Zoning Board’s decision. In our judgment, the last of the four above-quoted “conditions” imposed upon the Sposatos by the Zoning Board is plainly inconsistent with venerable and settled principles in the law of land use.
The fourth condition explicitly provides that “[t]he right to keep alpaca on this property does not run with the land; that is, if the [Sposatos] sell this property the next owners are not permitted to keep alpaca.” However, it is a basic principle that a zoning authority is not free to impose such a condition on the use of land. It is well settled that the law of zoning governs the use of the land itself, not those who occupy it.[4] Olevson v. Zoning Board of Review of Narragansett, 71 R.I. 303, 307, 44 A.2d 720, 722 (1945) (“[A zoning board] is concerned fundamentally only with matters relating to the real estate itself then under consideration and with the use to be made thereof, but not with the person who owns or occupies it.”);[5] see also Reid v. Zoning Board of Appeals of Lebanon, 235 Conn. 850, 670 A.2d 1271, 1275 (1996); French v. District of Columbia Board of Zoning Adjustment, 658 A.2d 1023, 1029 (D.C. App. 1995) (acknowledging that there is a “well-established principle that any conditions imposed on the granting of a variance, like the variance itself, must run with the land” and that “[p]ersonal conditions impermissibly regulate the business conduct of the owner, rather than the use of his property, and are unlawful per se”) (internal quotation marks omitted);[6] City of Baltimore v. Poe, 224 Md. 428, 168 A.2d 193, 195 (1961) (“It is settled law in this State that the zoning ordinance is concerned with the use of property and not with ownership thereof nor with the purposes of the owners or occupants.”); Vlahos Realty Co. v. Little Boar’s Head District, 101 N.H. 460, 146 A.2d 257, 260 (1958) (“[Z]oning conditions and restrictions are designed to regulate the land itself and its use and not the person who *469 owns or operates the premises by whom such use is to be exercised.”); Dexter v. Town Board of Gates, 36 N.Y.2d 102, 365 N.Y.S.2d 506, 324 N.E.2d 870, 871 (1975) (noting that it is “a fundamental principle of zoning that a zoning board is charged with the regulation of land use and not with the person who owns or occupies it”); State ex rel. Parker v. Konopka, 119 Ohio App. 513, 200 N.E.2d 695, 696 (1963) (“Zoning ordinances or regulations have reference to land use rather than to the persons who own the land.”); see generally, 83 Am. Jur. 2d Zoning and Planning § 797 (2013).
It is self-evident that the fourth condition imposed by the Zoning Board is completely inconsistent with principles articulated by this Court and so many others to the effect that a condition must run with the land and must not be limited to specific individuals.[7] For this reason, the Zoning Board’s decision in this matter cannot stand; as was the case in Olevson, 71 R.I. at 307, 44 A.2d at 722, the presence of so flawed a condition requires that the decision of the respondent board be vacated.
IV
Conclusion
For the reasons stated herein, we quash the judgment of the Superior Court. The record shall be remanded to the Superior Court with our decision endorsed thereon and with directions to remand the case to the Zoning Board of Review of the Town of Hopkinton.

. An alpaca is defined as "[a] domesticated South American ruminant mammal * * * related to the llama and having fine, long wool.” The American Heritage Dictionary of the English Language 50 (5th ed. 2011).

, We are aware that only three members of the five-member Zoning Board voted in favor of the motion whereby the four conditions were imposed upon the Sposatos; the other two members of the Board abstained. It not being required that we do so in reaching our decision, we do not pass upon this voting procedure.

. There is no need in the context of this case for us to comment on or review the first three conditions that were imposed upon the Spo-satos. See Grady v. Narragansett Electric Co., 962 A.2d 34, 42 n.4 (R.I. 2009) (referencing "our usual policy of not opining with respect to issues about which we need not opine”).

. “The question before the zoning board ought always to be: does the land in its physical surroundings justify the board in relaxing the zoning standards without regard to the individual who happens to be the owner? Any attempt to frame the question in terms of the identity and circumstances of the applicant makes zoning speak ad hominem rather than to the land and leads to arbitrary results not based on sound zoning principles.” Note, The Ad Hominem Element in the Treatment of Zoning Problems, 109 U. Pa. L. Rev. 992, 1009 (1961).

. A scholarly article in the North Carolina Law Review commented that "[t]he ruling by the Rhode Island Supreme Court in the case of Olevson v. Zoning Board of Review would probably be concurred in by most courts." Phillip P. Green, Jr., The Power of the Zoning Board of Adjustment to Grant Variances from the Zoning Ordinance, 29 N.C. L. Rev. 245, 278 (1951). Then, after summarizing the facts at issue in that case, the article concluded: "This type of special treatment for an individual [as occurred in Olevson] rather than for the property involved was held by the court to be ‘unreasonable’ and beyond the power of the board.” Id.

.We are well aware that the instant case does not involve the granting of a variance as such, but the principle that conditions must run with the land which has been articulated in variance cases is equally applicable to this case.

. The Zoning Board’s fourth condition in effect granted a personal license to the Sposa-tos. See Olevson v. Zoning Board of Review of Narragansett, 71 R.I. 303, 307, 44 A.2d 720, 722 (1945).