Simon Strauss *et al. vs.* Zoning Board of Review of The City of Warwick.

JULY 22, 1946.

Present: Flynn, C. J., Moss and Baker, JJ.

Flynn, C. J.    This petition for *certiorari* was brought,

under general laws 1938, chapter 342, §8, to review a decision of the zoning board of review of the city of Warwick, granting an exception or variance in the application of the zoning ordinance so as to permit the use of certain premises in the operation of a wholesale shellfish business. The respondents, pursuant to the writ, have certified to this court all the records that are pertinent to the proceeding and decision.

The following facts appear from the record: Albert J. Mayette, hereinafter called the applicant, made a contract to purchase certain lots with a building and improvements thereon, located at the corner of Suburban parkway and Bay View avenue in Oakland Beach. He desired to enlarge the fish business which he had conducted for many years on other premises that were a considerable distance from these lots. Thereupon he filed with the respondents, hereinafter called the board, an application for an exception or variance in the application of the zoning ordinance "For permission to operate a shellfish (Wholesale and·Retail) business on Plat 147 Lots 846, 847, 848, 910 now in a business Zone." These lots together form one parcel of land that is generally bounded on the south by waters of the cove; on the east by Suburban parkway, a public highway; on the north by Bay avenue, a public highway; and on the west by so-called "Stender" land.

Under the zoning ordinance which was amended on June 21, 1945 the city was divided into six classes ranging from Residence AA districts to Industrial E districts. The premises involved here are located in a "Business D" district, which permits retail fish and other retail stores, restaurants, gas stations, and certain commercial enterprises; but a *wholesale* shellfish business is not a permitted use. Bay avenue separates these lots and this "Business D" district from a "Residence B" district, where petitioner and most of the other remonstrants owned yearly or summer residential property.

The application which was filed on August 17, 1945 was duly advertised and a hearing thereon was held by the board

at which the applicant and petitioners were represented by counsel. Evidence was introduced by the applicant describing generally his proposal to alter the inside and to repair the outside of the building on these lots and to improve and beautify the grounds; to install suitable equipment in order to operate a modern, sanitary wholesale shellfish business; to process the shells by treatment with live steam in the basement and to dispose of them as a fill for a low spot in the rear. He also testified concerning his desire and proposal ultimately to cover the processed shells with dirt and to build a dock, the location of which is not clearly established, in order to provide facilities for fishing boats and to operate a gas filling station thereon to serve them; to use several trucks; and to employ possibly thirty or forty persons. After the hearing and before decision he recorded a deed to the lots.

The evidence for the remonstrants was to the effect that the granting of the application would result: (1) in obnoxious odors; (2) in attracting flies, and otherwise affecting the public health and comfort and the use of their properties and the beach nearby; (3) in increased truck traffic and hazards to children at play; and (4) in decreased values and lessened desirability of their property for yearly and summer residential purposes. At the conclusion of testimony the board personally inspected the location and later, in a written decision, granted the application.

The petitioners contend, first, that the application was so incomplete, indefinite and irregular as to be legally insufficient to warrant or support the decision thereon; second, that the board's action in granting the application exceeded its lawful authority under the ordinance; and, third, that the granting of the application was arbitrary, having no relation to the protection of the public health, safety and welfare, and was an abuse of discretion.

In our opinion the application, although not as complete as it could and should have been, is nevertheless definite and complete enough to support a limited decision, if other re-

quirements are found to be fulfilled. The application expressly asked an exception or variance to permit the use of these lots in the operation of a "shellfish (Wholesale and Retail) business". We agree with counsel for the board who stated, at the hearing before us, that such application was limited to the use of these lots in the operation of a wholesale *shellfish* business, and for nothing more; and that the decision of the board granted a variance only to that extent. In other words, the application did not seek and the board did not grant permission to build a dock or to operate a gas station, either of which would be the subject of application and consideration; nor did the decision permit the use of these premises in operating a general wholesale fish business. Only a wholesale *shellfish* business was applied for and granted. So interpreted, which we think is reasonable from the express terms of the application and the decision, there is no merit in the petitioners' first contention as to the decision.

The petitioners secondly contend that the board's action exceeded its lawful authority under the ordinance. The pertinent authority of the board to grant any exception or variance appears in section XV of the ordinance as follows: "3. In appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of this Ordinance where the exception is reasonably necessary for the convenience and welfare of the public. 4. In appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of this Ordinance in harmony with its general purpose and intent in the following cases: . . . e. To authorize in specific cases such variances in the application of the terms of the Ordinance as will not be contrary to the public interest where owing to special conditions a literal enforcement of the provisions of the Ordinance will result in unnecessary hardship and so that the spirit of the Ordinance shall be observed and substantial justice done."

Apparently the petitioners contend that the board's au-

thority, as limited by the provisions of paragraphs 3 and 4 e. was to be exercised only "In appropriate cases *and* subject to appropriate conditions and safeguards" and that the failure to attach any such conditions to the use shows that the board exceeded its authority. (italics ours) They further contend in this regard that there is no competent evidence to satisfy the requirements of these paragraphs of the ordinance, under which the board derives its authority to grant exceptions or variances and under either of which the decision had to be made.

Upon examination we find that the board did not expressly state or attach any conditions, as such, to the use which was granted to the applicant. Counsel for the respondent board stated, at the hearing before us, that such conditions were not necessary or intended and that none was attached to the use as granted. Counsel for the applicant, however, argued that such conditions are inherent in the decision. If we consider that no such conditions or safeguards were intended or attached by the board's decision to the use of the premises as granted, then upon the record before us the decision is open to the criticism that the board acted arbitrarily without providing some reasonable and appropriate safeguards to protect the public health, safety and welfare in harmony with the general purpose of the ordinance.

On the other hand, if we consider that appropriate conditions and safeguards are inherent in the decision, as counsel for the applicant contends, then the board should have specifically and separately enumerated them. Where such conditions are placed upon the granting of an exception or variance, they are placed upon the use of the premises and run with the land. Unless they are specifically and separately enumerated by the board, the material grounds of the decision are left to speculation; and the decision then may be open to the claim that it amounted merely to the granting of a personal license. See *Olevson* v. *Zoning Board of Review*, 71 R. I. 303.

More important, however, is the petitioners' claim that

there is no competent evidence to support a decision that a literal enforcement of the ordinance would result in unnecessary hardship peculiar to the applicant, and that the decision therefore exceeds the board's authority under the ordinance and is arbitrary. In this respect we do not find that the applicant *stipulated*, as petitioners contend, that there would be no such hardship to him from the denial of his application. It was merely admitted that he knew of the zoning restrictions upon these premises when he contracted to purchase them and that he intended to purchase them in any event. However, no specific evidence of unnecessary and peculiar hardship to the applicant is pointed out by the board in its decision and we find none.

The only reason advanced by the applicant's counsel amounts to an argument that the applicant would like to enlarge a business that he was already conducting at a location that apparently was *not* within this zone; and that, if an exception or variance were not granted for these premises, he would be left with his investment and could not use these premises in the most profitable manner. It does not appear that he could not enlarge his business at a location where such use is permitted. The mere fact that the ordinance did not permit the most profitable use of these premises is not of itself proof that the applicant would suffer an unreasonable and unnecessary hardship by enforcement of the zoning ordinance. See *Ricci* v. *Zoning Board of Review,* 72 R. I. 58. This is particularly true where, as here, the applicant purchased the premises with admitted knowledge of the zoning restrictions. Apparently the premises have been and are now being used to advantage for a permitted use. Therefore the applicant would not be deprived of all reasonable and beneficial use thereof. See *Robinson* v. *Town Council of Narragansett,* 60 R. I. 422. In our opinion the applicant's position in this respect is not different in principle from that of the applicants who were denied exceptions in *Roberts* v. *Zoning Board of Review,* 60 R. I. 202, and *Ricci* v. *Zoning Board of Review, supra.*

From our examination of the record here we find that there is no competent evidence to support the conclusion of the board that enforcement of the ordinance would result in unnecessary hardship peculiar to the applicant, as distinguished from that suffered alike by all owners of property in that district. In the absence of such competent evidence, the finding on this material issue is based on mere speculation, and is therefore arbitrary and in excess of the board's authority under the ordinance.

The prayer for relief in the petition is granted, the decision of the board is reversed, and the papers are ordered sent back to the respondent board.

*Hogan & Hogan, Robert A. Coogan,* for petitioners.

*William B. Sweeney, Walter J. Hennessey,* for Albert J. Mayette.

*Edward L. Godfrey,* City Solicitor, for Board.