## Assembly of God Church of Providence, Rhode Island vs. Zoning Board of Review of the Town of East Providence.

### July 7, 1960.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J. This is a petition for certiorari to review the action of the zoning board of review of the city, formerly the town, of East Providence in denying an application for an exception or variance to permit the use of three certain lots of land in a residence A district for a gasoline service station. The writ was issued and pursuant thereto the

respondent board has certified the pertinent records to this court for our inspection.

It appears from the evidence that in May 1955 petitioner purchased from Alphage Ferland & Sons, Inc. three certain lots of land on the westerly side of Newport avenue between Roger Williams avenue and Vista Drive, numbered respectively 555, 556 and 557 on assessor's plat No. 40.

After the purchase of the land, petitioner found that the area was insufficient for a church building and parking area and it also learned from tests made that the water level was so high as to seriously interfere with its plans for a basement below the church building proper. Since petitioner found it inexpedient to build on the land, it apparently decided to sell it and entered into negotiations with Tidewater Oil Company. This company planned to erect an automobile filling and greasing station. The investment would amount to approximately $125,000.

On June 13, 1957 petitioner filed its application for a special permit for a gasoline service station under section 5A, A(4) of chapter 43 of the zoning ordinance as amended by chap. 159, sec. 6. At the hearing before the board on July 1, 1957 petitioner was represented by counsel.

Richard E. Harris, an engineer for the Tidewater Oil Company, testified as to the type of building that would be erected.

Stephen L. Reed, a real estate broker, testified that in his opinion a gasoline station would not devaluate property in the area; that the land could be used to the best advantage for that purpose; and that such a station was necessary for the neighborhood, which was residential in character but still on a main highway.

A letter was introduced from William B. Collins, assistant divisional manager of the New England Fire Insurance Rating Association, to the Halliwell Insurance Agency, stating that "a cinderblock auto filling and greasing station

at the proposed location will have no effect on fire insurance rates on the surrounding property."

Counsel for petitioner stated that according to the state traffic division approximately 16,000 cars passed the area every day, and that a gasoline station would not create as much of a traffic hazard as would a church.

Frank Titus, a remonstrant, testified that the people of Rumford Terrace Plat were definitely opposed to the application for a gasoline station; that he had a petition signed by thirty-three abutting owners and taxpayers of the town; that there was no need for another gas station since there were three in the area and a fourth under construction; that it would be a safety and fire hazard; that they were assured when they bought their homes that a church was to be built in the area in question; that the previous owner attempted to have the area rezoned but had failed; that he had offered to buy back the land from the church for the price which it had paid for it; and that a gas station would depreciate property.

William E. Gormley testified that he was the nearest abutter to the property and he objected to the noise and odor of a gas station.

Stephen L. Reed, when asked if he thought a gas station would tend to lessen the value of the home of Dr. George J. Grinsell, Jr. said that he thought it would.

After considering the application the board "voted that the petition of the Assembly of God Church be denied, because Mr. Ferland, who opened the plat, sold to the Assembly of God Church for the sole purpose of erecting a church and the Trustees of the Church in good faith purchased to build a church, but found out the land was not large enough and due to other conditions, could not build."

This court on a certiorari proceeding to review a decision of the board of review does not weigh the evidence. *Sweck v. Zoning Board of Review*, 77 R. I. 8, and cases therein cited. The questions here are: Did the board abuse its

discretion and was there legal evidence to support its decision?

The petitioner contends that there was a lack of such evidence. It argues that the health, safety, morals and general welfare would not be adversely affected. There was testimony, however, of general objections on the part of nearby residents to the odor and noise emanating from a gasoline station.

The petitioner urges that the character of the district is commercial and its particular suitability is for commercial purposes. The evidence is that the lots in question are in a residence A district. If actually the area has become commercialized, which is not borne out by the evidence, a change of zoning is not within the jurisdiction of the board of review. General laws 1956, §§45-24-2 and 45-24-13. It is quite possible that the lots are suitable for commercial purposes, but the board could find that there was ample evidence of their suitability for residential purposes.

It is also urged that the value of adjacent property would not be depreciated. Mr. Reed expressed the opinion that a gasoline station such as planned with a barrier between it and adjoining properties would not depreciate surrounding properties.

The petitioner in its brief states, "The uncontradicted testimony of the expert witness was that this lot of land was no longer desirable for residential purposes because of the commercial character of the neighborhood." We do not know whether the transcript of the hearing contains all the evidence given by Mr. Reed. We can only say that as certified to us the transcript contains no such statement, nor does the diagram submitted of the neighborhood adjacent to petitioner's land show such a commercialization as would warrant the statement allegedly made.

Furthermore petitioner urges that the highest and best use of the land would be realized by the establishment on it of a gasoline station. In *Strauss* v. *Zoning Board of Re-*

*view,* 72 R. I. 107, at page 112, the court stated, "The mere fact that the ordinance did not permit the most profitable use of these premises is not of itself proof that the applicant would suffer an unreasonable and unnecessary hardship by enforcement of the zoning ordinance." The evidence in this case is far from showing that petitioner is deprived of a reasonable beneficial use of its land by reason of the board's denial of its application.

It is contended that the board's decision was illegal since it failed to state any valid reason for denying the application. It may be conceded that the decision mentioned only a single ground, but it is clear from the evidence and the questions asked by the members of the board that their reason lay in the fact that the area in reality as well as in name was residential; that public welfare and convenience did not require the invasion of a residential area by a business or commercial use; and that there was genuine resistance to such invasion for reasons of health.

We have held heretofore that a board's decision should contain its reasons, but we have also held that where reasons were not stated, if they could be found in the evidence the decision would not be set aside for that reason. *Winters* v. *Zoning Board of Review,* 80 R. I. 275; *Coffin* v. *Zoning Board of Review,* 81 R. I. 112.

After a careful consideration of the evidence we are of the opinion that the board did not abuse its discretion.

The petition for certiorari is denied and dismissed, the decision of the respondent board is affirmed, and the records certified are ordered sent back to the board.

*Angelo Di Spirito, Jr.,* for petitioner.

*Sarkis Tatarian,* City Solicitor, for respondent.