**Supreme Court**

No. 2013-321-M.P.
(PC 11-7249)

Kenlin Properties, LLC et al.          :

v.          :

City of East Providence et al.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kenlin Properties, LLC et al.      :

v.             :

City of East Providence et al.      :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** This Court granted a petition for writ of certiorari filed by the City of East Providence and the East Providence Zoning Board of Review (zoning board) (collectively, the city) seeking review of a judgment of the Superior Court. The zoning board had affirmed a notice of violation issued by the East Providence zoning officer finding several violations of a use variance that had been granted in 1998 to the owner and operator of a facility known as Pond View Recycling (Pond View). Kenlin Properties, LLC (Kenlin) and TLA-Providence, LLC (TLA), as the owner and operator of Pond View, appealed to the Superior Court from the zoning board's decision upholding the notice of violation.[1] A trial justice of the Superior Court reversed the zoning board, concluding that the zoning board's decision was clearly erroneous and made upon unlawful procedure. For the reasons set forth in this opinion, we quash the judgment of the Superior Court.

---

[1] At the time the appeal from the zoning board's decision was filed in the Superior Court, Kenlin was the owner of the property and TLA was the operator of the business. However, TLA entered into receivership in March 2012.

**Facts and Procedural History**

The property at issue in this appeal is located at One Dexter Road in East Providence (the property) and at present is owned by Kenlin. At the time of the notice of violation, the property was operated as a construction and demolition (C&D) debris processing facility known as Pond View.

When the application for a use variance was originally filed in January 1998, Pond View was registered with the Rhode Island Department of Environmental Management (DEM) as a processing facility. The then owner and the proposed lessee of the property applied to the zoning board for a use variance to operate Pond View as a facility for "primarily the recycling of natural and processed wood materials into mulch products." The application described the property as covering 15.614 acres containing three buildings: a 67,578-square-foot brick and block industrial warehouse, a 24,583-square-foot metal warehouse, and a 24,990-square-foot metal warehouse. The list of "proposed construction and uses" requested permission to "allow incidental metal separation as an accessory use." The application sought a variance under which "[l]imited metal reclamation [would be] permitted, if it [was] carried on in an enclosed building," and other special conditions "which would permit immediate [outside] operation of the wood recycling operation" for eighteen months, at which time "an enclosure designed specifically for the C&D and wood processing or recycling machine" would have been built.

Prior to voting on the application, members of the zoning board questioned Kenneth Foley, the proposed lessee of the property, regarding the storage of product, an enclosure for the grinder, and a sound-absorbing berm. Foley responded that there would be an open-ended building that "looks like a greenhouse," and an earth berm to absorb the sound, plus a tree buffer

zone at the property line. The zoning board unanimously granted the application but imposed four conditions on the use variance: (1) limiting the grinding of materials to 150 tons per day; (2) restricting the grinding hours from 8 a.m. to 4 p.m. daily Monday through Friday and 8 a.m. to noon on Saturday; (3) constructing a berm before grinding operations commence; and (4) completing the grinder enclosure within eighteen months.

In February 2003, DEM granted Pond View a license, pursuant to G.L. 1956 § 23-18.9-8(a)(1),[2] to increase the processing capacity to 500[3] tons per day. In 2005, the city sought both a declaratory judgment declaring that Pond View was violating its use variance by receiving more than 150 tons per day of C&D debris and an injunction precluding Pond View from operating its facility. A justice of the Superior Court issued a declaratory ruling holding that: the original use variance remained "valid and intact," that the "principal regulatory authority" was the state, that "only those zoning regulations that [did] not inhibit the state regulatory scheme [could] be utilized," and that the city was not prohibited from pursuing "any putative violation of a local zoning ordinance" through normal administrative procedures.

Subsequently, on May 27, 2011 the city zoning officer issued a notice of violation to Pond View alleging violations of the use variance granted in 1998. The zoning officer reviewed Pond View's 1998 variance application and site plan, the transcripts from the 1998 hearings, and the 2011 DEM-approved site plan. After reviewing the documents, the zoning officer found that it was "abundantly clear that the approved 'open storage' area was constrained to the pad illustrated on the site plan submitted in conjunction with the '[a]pproved [v]ariance,'" and that

---

[2] General Laws 1956 § 23-18.9-8(a)(1) states in pertinent part that "[n]o person shall operate any solid waste management facility or construction and demolition (C&D) debris processing facility or expand an existing facility unless a license is obtained from the director except as authorized by § 23-18.9-8."
[3] On May 2, 2011, DEM granted Pond View a 1,500-tons-per-day license.

"[t]he present/proposed operation [had] well exceeded the 'approved' pad-site." The zoning officer further found that it was "abundantly clear that the '[a]pproved [v]ariance' was limited to 150-tons, and not simply the grinding of 150-tons [because] 'Pond [V]iew' repeatedly testified as to the exact quantity * * *." After further review of the hearing transcripts, the zoning officer also found that it was "abundantly clear that wood products would be the predominant material handled, and for which a variance [had been] granted." However, the zoning officer found, wood products comprised less than half of the incoming C&D materials at Pond View. Additionally, the zoning officer stated that "Pond View has continuously argued that there is a unique distinction between the hours of operation and hours allocated to the 'grinding' component of the operation. However, no such distinction was offered during testimony." The zoning officer also found that there was no longer an "earthen berm with natural vegetation atop," which had been "a specified condition of approval [of the variance]." The zoning officer further noted that Pond View testified to having "one grinder" on the property but, in its 2011 DEM submission, it added a second machine, which the zoning officer concluded was "outside the scope of the '[a]pproved [v]ariance.'"

The zoning officer ultimately cited Pond View for: exceeding the approved open storage area; expanding beyond the 150-ton limit approved in the 1998 use variance; accepting products other than wood; operating beyond the permitted hours of operation; failing to maintain an earthen berm; and adding additional equipment to the site. In or about June 2011, Kenlin and TLA appealed the notice of violation to the zoning board.

The zoning board held hearings in the fall of 2011 and issued a unanimous decision on October 19, 2011, denying Kenlin and TLA's appeal. In affirming the decision of the zoning officer, the zoning board made the following findings of fact:

- 4 -

"1. The [b]oard has considered the findings of the [z]oning [o]fficer;

"2. The [b]oard has considered the recommendation of the [p]lanning [b]oard;

"3. The use for which the variance was granted was primarily the recycling of natural and processed wood into mulch products;

"4. That the operation today is not primarily the recycling of natural and processed wood into mulch products;

"5. The types of materials being taken in and processed exceed what was applied for and granted in the variance;

"6. There are presently two grinding machines at the operation;

"7. The permitted use allows for one grinding machine;

"8. That material currently processed such as tires, concrete, vinyl siding exceed the use permitted by the variance;

"9. That * * * based upon testimony presented and the photos entered into evidence, the record shows that the petitioner has open storage on the premises that exceeds the limits of the permitted use;

"10. Based upon the testimony and the findings from the records, the petitioner is processing in excess of the tonnage that's allowed to be processed[.]"

Kenlin and TLA, on behalf of Pond View, appealed the zoning board's decision to the Superior Court on December 23, 2011. Before the Superior Court, Kenlin and TLA argued that the zoning officer and zoning board erred in considering documents and testimony outside of the recorded variance. Kenlin and TLA also argued that "the 2006 [d]eclaratory [j]udgment preclude[d] re-litigation of the issues of daily tonnage limits and the acceptance and processing of concrete because the [2006 declaratory judgment] considered the scope of the 1998 [use variance] as well as the actual use of the [p]roperty." Conversely, the city maintained that the zoning officer and zoning board "properly looked beyond the four corners of the [variance] to determine what was permitted," and that the zoning board properly affirmed the zoning officer's decision.[4]

---

[4] As the appeal in Superior Court was brought by Kenlin and TLA, the city challenged TLA's standing because of its receivership. However, the trial justice rejected that argument because, although TLA was in receivership and its operations had since ceased, TLA had operated the

On August 2, 2013, the trial justice issued a written decision reversing the decision of the zoning board. The trial justice noted that the zoning officer and zoning board "relied on sources outside the [variance] to construe the conditions to include items not approved in 1998." Specifically, the trial justice determined that the variance "[did] not impose: site plan restrictions[,] open storage restrictions[,] limits on daily tonnage receipt or processing[,] limits on the types of materials that may be accepted or processed[,] limits on the [f]acility's hours of operation[,] a requirement for an earthen berm with trees atop[,] or a limit to one machine on the [p]roperty." The trial justice held that the zoning officer and zoning board "were without authority to revisit the prior[] [zoning] [b]oard's work to create a violation." The trial justice concluded that "conditions must be clearly expressed to be effective," thus, the zoning board "erred in upholding the [notice of violation] and in finding violations with respect to the scope of the use, materials, and the [s]ite [p]lan."

On the issue of collateral estoppel, the trial justice was "satisfied that the requirements for collateral estoppel [were] met" in this case because, identical to the 2006 declaratory judgment action, the city was again a party, Kenlin and TLA were in privity with Pond View, "the tonnage and material receipt issues [were] 'identical' * * *[,] and the prior proceeding resulted in a final judgment." Thus, the trial justice held that "[t]he 2006 [d]eclaratory [j]udgment bar[red] re[-]litigation of the grinding and concrete processing issues." Ultimately, the trial justice held that Kenlin and TLA's "substantial rights were prejudiced because the [d]ecision of the [z]oning [b]oard, affirming the [z]oning [o]fficer's [n]otice of [v]iolation, was clearly

---

facility since 2008, held a license from DEM, and had been leasing the premises from Kenlin. Thus, the trial justice determined that TLA was an aggrieved party as defined by the Zoning Enabling Act, G.L. 1956 chapter 24 of title 45.

erroneous and made upon unlawful procedure." Thus, the trial justice granted Kenlin and TLA's appeal, and final judgment entered on September 6, 2013.

Subsequently, the city filed a petition for writ of certiorari with this Court, seeking review of the Superior Court's decision. We granted the city's petition and issued a writ on May 5, 2014. Before us, the city argues that the trial justice erred by: (1) "substituting her judgment for that of the * * * zoning officer and zoning board in determining the scope of the [1998 use variance]; (2) "holding that the [c]ity could not consider the application, site map, and testimony at the 1998 public hearing[s] in determining the scope of the use that was granted to Pond View in the 1998 [use] variance; (3) by analyzing the conditions of the 1998 use variance instead of the scope of the 1998 use variance; and (4) "in applying collateral estoppel to preclude the zoning officer from raising the 'tonnage' and 'concrete' issues regarding Pond View's use of the facility."

## II

## Collateral Estoppel

A threshold issue in this case is whether the zoning officer and zoning board were precluded by the doctrine of collateral estoppel from raising the "tonnage" and "concrete" issues when considering whether Pond View violated the use variance.

## A

## Standard of Review

"The determination of whether collateral estoppel should be applied presents a question of law[.]" Casco Indemnity Co. v. O'Connor, 755 A.2d 779, 782 (R.I. 2000). "[T]herefore we * * * review this issue de novo." Id.

## Discussion

The city argues that the trial justice "erred in applying collateral estoppel principles to preclude the zoning officer from raising the 'tonnage' and 'concrete' issues regarding Pond View's use of the facility." Conversely, Kenlin contends that the trial justice correctly applied the doctrine of collateral estoppel and "properly precluded the [c]ity from re[-]litigating the issues that had been decided against it in the 2006 declaratory judgment proceeding."

"Under the doctrine of collateral estoppel, an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings." Foster-Glocester Regional School Committee v. Board of Review, 854 A.2d 1008, 1014 (R.I. 2004) (quoting George v. Fadiani, 772 A.2d 1065, 1067 (R.I. 2001)). We have held that collateral estoppel applies when the case meets three requirements: "(1) the parties are the same or in privity with the parties of the previous proceeding; (2) a final judgment on the merits has been entered in the previous proceeding; [and] (3) the issue or issues in question are identical in both proceedings." Id.

The 2006 declaratory judgment that entered to dispose of the 2005 litigation between the city and Pond View provided as follows:

> "1. The original variance issued to Pond View * * * [was] valid and intact;
> "2. The principal regulatory authority for [Pond View] [was] the State of Rhode Island and only those zoning regulations that [did] not inhibit the state regulatory scheme [could] be utilized; and
> "3. The City of East Providence [was] not prohibited from pursuing, through normal administrative procedures, any putative violation of a local zoning ordinance, subject to paragraph 1."

Here, the city is again a party, Kenlin is in privity with Pond View, and a final judgment on the merits was entered by the 2006 declaratory judgment. Therefore, the first two requirements of

collateral estoppel are met. See Foster-Glocester Regional School Committee, 854 A.2d at 1014. The hearing justice in the earlier litigation, however, did not purport to resolve the tonnage issue, nor did he ever address the processing of materials other than wood products.[5]

A careful review of the hearing justice's 2006 bench decision reveals the limited nature of the court's ruling. He began by noting that Pond View operates a "solid waste management facility in East Providence * * * where their [principal] activity seems to be the processing of wood for recycling and redistribution * * *." This is clearly consistent with the scope of the original use variance as determined by the zoning officer and zoning board of review. The hearing justice then quoted from the transcript of the 1998 zoning board hearing at which the use variance was granted and indicated that a difference of opinion had arisen over time as to whether the 150-tons-per-day limit applied to receiving materials or to the grinding operations only. The hearing justice did not resolve this issue definitively, stating at first that "it seems as though there is not an adequate basis for [the city's] conclusion" that the limit applied to both grinding and receipt, rather, "the focus for the variance was on the grinding."

The hearing justice then set forth the respected positions of the parties. The city, as plaintiff, was seeking to enjoin further operation of the facility as well as a declaration that "the facility is currently being operated without any appropriate license from the [c]ity"—whereas, the position of the defendant, Pond View, was that it had not given up its use permit, and could continue to operate.

The hearing justice was careful to "limit the role of the [c]ourt * * * in terms of some global declaration about the rights and duties of the parties." He found that the state, through DEM and the Solid Waste Management Corporation, was the principal regulatory authority, but

---

[5] We shall refer to the Superior Court justice who decided the city's complaint requesting declaratory relief as the hearing justice.

- 9 -

that "[did] not in any way oust the [c]ity from doing pretty much what it wishes to with its zoning ordinances." He concluded that Pond View had not forfeited its use variance. In referencing a license issued in 2003 by DEM to Pond View permitting it to process 500 tons per day, the hearing justice said: "I do not believe this [c]ourt is in a position to give any sort of go[-]ahead or declare, yes, they can start processing 500 tons next week * * *." He reiterated that local zoning laws apply but that they may not be "employed to shut a facility down that is otherwise conforming to the strictures imposed by the [s]tate on these kinds of facilities." He ultimately held that "only those zoning regulations that do not inhibit the state regulating scheme may be utilized."

It is our opinion that neither the declaratory judgment itself nor the hearing justice's decision resolved the issues of how much tonnage Pond View was permitted to process per day and the types of materials it was permitted to process. The hearing justice specifically stated that he would not declare how many tons it could start processing, and it is clear from his decision that he considered Pond View to be a wood-processing facility. Moreover, the judgment provides that the city is "not prohibited from pursuing, through normal administrative procedures, any putative violation of a local zoning ordinance," subject to the original variance. It is clear from the record that the hearing justice chose not to address the specific arguments on the tonnage or materials that Pond View was permitted to process at its facility. Thus, the third requirement of collateral estoppel is not met and the city was not barred from pursuing violations based on the amount or type of material accepted at Pond View.

## III

## The Scope of the 1998 Use Variance

## A

## Standard of Review

The Superior Court's authority to review a zoning board's decision derives from G.L. 1956 § 45-24-69(d), which provides in pertinent part:

> "The [Superior] [C]ourt shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
> "(1) In violation of constitutional, statutory, or ordinance provisions;
> "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
> "(3) Made upon unlawful procedure;
> "(4) Affected by other error of law;
> "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
> "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

"On a petition for certiorari from a Superior Court judgment that has entered after an appeal from a municipal zoning board's decision, we confine our review to a determination of whether the trial justice acted within his or her authority as set forth in § 45-24-69." Iadevaia v. Town of Scituate Zoning Board of Review, 80 A.3d 864, 870 (R.I. 2013) (quoting Sciacca v. Caruso, 769 A.2d 578, 582 (R.I. 2001)).

On appeal, we do not weigh the evidence; rather, "we review the record to determine whether substantial evidence existed to support the Superior Court justice's decision." Iadevaia, 80 A.3d at 870 (quoting Pawtucket Transfer Operations, LLC v. City of Pawtucket, 944 A.2d

855, 859 (R.I. 2008)). "Substantial evidence is defined as 'such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance.'" Id. (quoting Pawtucket Transfer Operations, LLC, 944 A.2d at 859). "We do not reverse a Superior Court justice's decision unless it can be shown that the justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." Id. (quoting Pawtucket Transfer Operations, LLC, 944 A.2d at 859).

**B**

**Discussion**

The city contends that the underlying issue before the zoning board was the "scope or character of the 1998 use variance granted," not the "specific conditions imposed upon [the variance]." The city argues that the trial justice erred in holding that the zoning official and zoning board could not consider the application, site map, and testimony at the public hearing in determining the scope of the variance. Thus, the city argues that the trial justice erred "by substituting her judgment for that of the * * * zoning officer and zoning board in determining the scope of the original 1998 Pond View use variance which was a question of fact to be determined by the zoning official and zoning board." Moreover, the city maintains that the trial justice "erred in applying a 'conditions' analysis to the issue of the scope of the 1998 variance."

Kenlin argues that the trial justice "did not substitute her judgment for that of the * * * zoning board" because, Kenlin maintains, "the meaning of the variance and its conditions is a question of law and not of fact." Kenlin avers that the trial justice "correctly held that the zoning board erred in considering matters other than the recorded variance * * * in determining the legal

- 12 -

meaning of the variance" and that she "applied the correct analysis in determining the scope of the 1998 variance."

A "use variance" is defined by § 45-24-31(65)(i) as "[p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance."[6] In other words, a use variance provides relief "when an owner seeks to employ land for a use not permitted in that zoning district under the applicable zoning ordinance." Sciacca, 769 A.2d 582 n.5. We have described a variance as "a constitutional safety valve to prevent confiscation of one's property" from burdensome zoning ordinance regulations. Northeastern Corp. v. Zoning Board of Review of New Shoreham, 534 A.2d 603, 605 (R.I. 1987). Since a variance provides relief from a zoning ordinance, it is "strictly construed to limit relief to the minimum variance which is sufficient to relieve the hardship." 83 Am. Jur. 2d Zoning and Planning § 812 (2016).

The power to grant a use variance is entrusted to the zoning board of review. See § 45-24-41(a). "In granting a variance * * * the zoning board of review * * * may apply the special conditions that may * * * be required to promote the intent and purposes of the comprehensive plan and the zoning ordinance of the city or town." Section 45-24-43. However, we have held that "such conditions on a grant permitting a use of the land [are] effective only when specifically and clearly stated in the record." Town of Warren v. Frost, 111 R.I. 217, 221, 301 A.2d 572, 574 (1973). Furthermore, "conditions placed upon a variance * * * are placed upon the use of the premises and run with the land"; thus, "where there are conditions or restrictions

---

[6] We are hard-pressed to find in the record of the 1998 proceedings before the zoning board any evidence that the applicants would be deprived of all beneficial use of the property if the variance was not granted. The issue was not raised at the hearings, nor was the grant of a variance ever appealed. Thus, the issue is not before us.

on the use of land, they must appear as of record and be clearly stated in the documents or instruments evidencing the title thereto." Id.

Here, in determining the scope of the use variance, the zoning officer reviewed the 1998 variance, application, hearing transcripts, and site plan. Based on these documents, the zoning officer determined that the scope was "abundantly clear": Pond View would contain the area of open storage, the facility would be primarily for the recycling of natural and processed wood materials into mulch products, the amount of materials "coming in" and "going out" would be limited to 150 tons, the hours of operation would be Monday through Friday, 7 a.m. to 5 p.m. and Saturday 7 a.m. to noon, an earthen berm would be maintained with natural vegetation atop, and one machine would be on site. Additionally, in upholding the zoning officer's notice of violation, the zoning board found that the 1998 use variance was granted "primarily [for] the recycling of natural and processed wood into mulch products" and that "the permitted use allow[ed] for one grinding machine." In affirming the violation, the zoning board found that Pond View was exceeding the scope of the use variance by recycling more than the permitted primary use of recycling "natural and processed wood into mulch products," accepting products other than wood, processing materials other than what was granted in the variance, surpassing the approved open storage area, and adding additional equipment to the site. The zoning board also cited Pond View for violating the conditions imposed in the variance by expanding beyond the 150-ton limit approved in the 1998 use variance.

On appeal in the Superior Court, the trial justice reversed the zoning board, holding that the zoning board erred as a matter of law by finding violations premised on conditions outside those stated in the 1998 use variance. Specifically, the trial justice determined that the 1998 use variance had not "impos[ed] site plan restrictions[,] open storage restrictions[,] limits on daily

- 14 -

tonnage receipt or processing[,] limits on the types of materials that may be accepted or processed[,] limits on the [f]acility's hours of operation[,] a requirement for an earthen berm with trees atop[,] or a limit to one machine on the [p]roperty." The trial justice noted that "conditions must be clearly expressed to be effective," and held that the zoning board "erred in upholding the [notice of violation] and in finding violations with respect to the scope of the use, materials, and the [s]ite [p]lan" because the 1998 use variance "contain[ed] no such restrictions."

The question before us is whether the scope of a use variance must be explicitly described in the decision granting the variance or whether it may be construed by referring to the entire public record, including the application, exhibits, and hearing transcripts. If the former, the question is one of law to be determined by the court; if the latter, it is a question of fact to be determined by the zoning board subject to judicial review pursuant to § 45-24-69. We begin our inquiry by reviewing relevant statutory provisions. Sections 45-24-41(c)[7] and (d)[8] require that

---

[7] Section 45-24-41(c) states:
   "In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
   "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
   "(2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
   "(3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
   "(4) That the relief to be granted is the least relief necessary."
[8] Section 45-24-41(d) states, in relevant part:
   "The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: (1) in granting a use variance the subject

- 15 -

the record of the proceedings include evidence pertaining to the hardship from which the applicant seeks relief, including that the relief is the least relief necessary, and also that the property cannot yield any beneficial use if relief is not granted. Section 45-24-61[9] provides that the written minutes, records of the examination, findings of fact, and other official actions of the zoning board be recorded and filed in the office of the zoning board and that the decision granting a variance be recorded in the land evidence records.

Our case law is not especially abundant on the subject of whether the public record may be considered in determining the scope of a use variance. In an action to enjoin an alleged violation of a zoning ordinance, we looked to the evidence in the record, including the testimony of various witnesses in considering whether certain activities exceeded a previously granted use variance. Frost, 111 R.I. at 218, 221, 301 A.2d at 572-73, 574. We reiterated, however, the principle enunciated in Strauss v. Zoning Board of Review of Warwick, 72 R.I. 107, 48 A.2d 349

---

land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance * * *."

[9] Section 45-24-61 states, in pertinent part:

"(a) Following a public hearing, the zoning board of review shall render a decision * * * [and] shall include in its decision all findings of fact and conditions, showing the vote of each participating member, and the absence of a member or his or her failure to vote. Decisions shall be recorded and filed in the office of the city or town clerk * * * and is a public record. The zoning board of review shall keep written minutes of its proceedings, showing the vote of each member upon each question, or, if absent or failing to vote, indicating that fact, and shall keep records of its examinations, findings of fact, and other official actions, all of which shall be recorded and filed in the office of the zoning board of review in an expeditious manner upon completion of the proceeding.

"(b) * * * Any decision evidencing the granting of a variance, modification, or special use shall also be recorded in the land evidence records of the city or town."

- 16 -

(1946), that conditions placed upon a variance are placed upon the use of the premises and run with the land and are "effective only when specifically and clearly stated in the record." Frost, 111 R.I. at 221, 301 A.2d at 574.[10]

We find persuasive, however, cases from other jurisdictions that have considered the issue. "Under New Hampshire law, '[t]he scope of a variance is dependent upon the representations of the applicant and the intent of the language in the variance at the time it is issued.'" 1808 Corp. v. Town of New Ipswich, 20 A.3d 984, 986 (N.H. 2011) (quoting North Country Environmental Services, Inc. v. Town of Bethlehem, 772 A.2d 330, 336 (N.H. 2001)). In an action where a defendant had been granted a variance to "'establish a private [airplane] landing area' in front of his home," the town sought "by bill in equity to restrain [the] defendant from * * * an extension * * * of the use permitted by the variance." Town of Rye v. Ciborowski, 276 A.2d 482, 484 (N.H. 1971). In upholding the findings of a judicial referee that the defendant had exceeded the scope of the use granted, the court reviewed the variance application and the defendant's testimony. Id. at 486.

Similarly, the Nevada Supreme Court has pronounced: "Because a variance affords relief from the literal enforcement of a zoning ordinance, it will be strictly construed to limit relief to the minimum variance which is sufficient to relieve the hardship." Clark County Board of Commissioners v. Taggart Construction Co., 615 P.2d 965, 967 (Nev. 1980). The Nevada Supreme Court stated that "[i]n order to determine the scope of the variance, we must consider both the representations of the applicant and the intent of the language in the variance at the time that it was issued." Id. at 968.

---

[10] We note that Strauss v. Zoning Board of Review of Warwick, 72 R.I. 107, 48 A.2d 349 (1946), was the direct review of the grant of a variance, whereas Town of Warren v. Frost, 111 R.I. 217, 301 A.2d 572 (1973), like this case, dealt with the enforcement of a variance.

The Connecticut Supreme Court, in a case in which the issue on appeal was "whether the conditions attached to the granting of a variance must be explicitly described in the certificate of variance," held that "such conditions should be construed not only by examining the language contained in the certificate of variance, but [also] by considering the entire public record, including the variance application, the accompanying plans and exhibits, the minutes or hearing transcript, and the record of decision." Anatra v. Zoning Board of Appeals of Madison, 59 A.3d 772, 774, 782-83 (Conn. 2013).  The court provided that

> "[a]mong the reasons for reviewing the public record is that a variance application and accompanying materials, the testimony at the hearing, and the comments of board members as revealed in the minutes and hearing transcripts provide more comprehensive information than the language in a certificate of variance regarding the changes being sought and the nature of the limitations and conditions imposed by a board." Id. at 781.

In our opinion, such an approach makes eminent good sense.  A use variance is inimical to a comprehensive zoning regime; it allows a real estate owner to use his property in a manner otherwise prohibited by the zoning regulations.  It is "a constitutional safety valve to prevent confiscation of one's property." Northeastern Corp., 534 A.2d at 605.  Accordingly, a use variance is to be strictly construed to limit the relief granted to the minimum degree necessary to relieve the hardship. See § 45-24-41(c)(4); 83 Am. Jur. 2d Zoning and Planning § 812.  In no case should the scope of a use variance ever exceed the relief originally requested by the property owner in his or her original application and testimony before the zoning board. See 83 Am. Jur. 2d Zoning and Planning § 812 (explaining that a variance should be strictly construed to limit relief to a minimum).  To hold otherwise would allow a prohibited use to expand through an inartfully worded motion by a member of a zoning board or simply through the passage of time.  We conclude, therefore, that the determination of the scope of a use variance is a question

of fact entrusted in the first instance to the local zoning officer and then to the zoning board, subject to appellate review by the Superior Court.

In this case, the original application for a use variance clearly indicated that the proposed use was "primarily the recycling of natural and processed wood materials into mulch products" and "incidental metal separation as an accessory use." The applicants also requested special conditions that would allow them "to commence outside processing and recycling of wood, including processing of [C&D] material, immediately and do so for eighteen months after which [Pond View] would have built an enclosure * * * for the C&D and wood processing or recycling machine."

Here, a review of the record reveals what appears to be a good-faith effort (we have no reason to assume otherwise) by the applicants in 1998 to address the concerns of the members of the zoning board as well as of several abutters. The applicants' counsel, after reciting a litany of material that would not be processed at the facility, clearly emphasized that "what we're processing is wood. The product from this processing will render wood chips. * * * This is an environmentally-friendly operation * * *." Foley, testifying on behalf of Pond View, indicated that it had a permit from DEM to process and grind 150 tons of wood products every day.

Foley explained how the facility would operate. A machine would grind the wood, then a magnet would extract metal objects such as nails and door handles. These materials would be placed in a barrel and transported to a metal recycling facility. The C&D product would be received by truck, weighed to ensure that it did not exceed 150 tons per day, spot-checked, and dumped onto a pad. If there is a problem, Foley assured the zoning board, "we'll put it right back on the truck. * * * There's nothing that's going to sneak by."

In response to questioning from members of the zoning board, Foley indicated that "[t]here's going to be an earth berm put in place around the machine to be landscaped, and it would have evergreens on the top * * *." The hours of operation would be 7 a.m. to 5 p.m. Monday through Friday, and 7 a.m. to noon on Saturday. He further stated that unprocessed material "will always be stored in the containers inside the building." The processed materials, the clean wood chips, would be stored on the concrete pad up to a maximum of 100 tons. At one point, the following exchange occurred between Foley and a member of the zoning board:

> "[zoning board member]: Now, you're only going to grind wood, correct?
>
> "Foley: That's correct. It's not any type of grinding concrete block or anything.
>
> "[zoning board member]: You would agree that this variance would be limited to wood only, correct?
>
> "Foley: That's right."

At the conclusion of the hearing, Foley specifically agreed "to a 150-ton limit of the operation per day," that the "grinding hours" would be 8 a.m. to 4 p.m. Monday through Friday and 8 a.m. to noon on Saturday, that a berm would be installed "around the machine," that the facility would recycle wood only, and that there would be no outside storage other than what was allowed under the existing zoning ordinance.

A zoning board member then proposed the following findings of fact: "that the use is [compatible] with the neighboring land use[,] that the use does not create a nuisance in the neighborhood[,] that the use does not hinder the future development of the city[,] that the use conforms with all applicable sections to the use requested[,] [and] that the applicant would be deprived of any beneficial use of the property if the applicant is required to conform to the

provisions of the [z]oning [o]rdinance." A motion was made to grant "this use variance," which passed unanimously.

We are well satisfied that, in considering the notice of violation, the zoning officer and zoning board properly reviewed the record to determine the scope of the use permitted by the 1998 use variance and that the findings of fact by the zoning board were not "[c]learly erroneous in view of the reliable, probative, and substantial evidence of the whole record." Section 45-24-69(d)(5). We hold, therefore, that the trial justice erred by reversing the decision of the zoning board.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we quash the judgment of the Superior Court and remand the case to the Superior Court with instructions to enter judgment for the city. The record of the case shall be returned to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  Kenlin Properties, LLC et al. v. City of East Providence et al.

**CASE NO:**  No. 2013-321-M.P.
      (PC 11-7249)

**COURT:**  Supreme Court

**DATE OPINION FILED:** June 23, 2016

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

    For Petitioners: Lauren E. Jones, Esq.
          Robert S. Thurston, Esq.
          Timothy J. Chapman, Esq.

    For Respondents: Thomas M. Dickinson, Esq.
           James P. Howe, Esq.