**Supreme Court**

No. 2014-127-M.P.

(WC 12-151)

Amber Preston            :

v.                       :

The Zoning Board of Review    :
of the Town of Hopkinton et al.

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Amber Preston                              :

v.                              :

The Zoning Board of Review                 :
of the Town of Hopkinton et al.


Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  At issue in this case is the legal propriety of a decision

allowing Todd and Tina Sposato (the Sposatos) to keep four alpacas on their residential property

in Hopkinton (the property) as pets.[1]  The petitioner, Amber Preston, filed a petition for issuance

of a writ of certiorari, which this Court granted, seeking review of a Washington County

Superior Court judgment, in which the Superior Court justice affirmed the decision of the Zoning

Board of Review of the Town of Hopkinton (Zoning Board).  The Superior Court justice

classified the four alpacas as "pets" and accordingly declared that keeping them on the property

located in an R-1 zone was a permitted use.  Ms. Preston contends that the Superior Court justice

erred when he "suggested the keeping of alpacas as pets [is] an accessory use in an R-1 zone."

With respect to the decision of the Zoning Board, Ms. Preston avers that the Zoning Board

---

[1]     An alpaca is defined as "[a] domesticated South American ruminant mammal * * * related to the llama and having fine, long wool."  The American Heritage Dictionary of the English Language 50 (5th ed. 2011).

- 1 -

"exceeded its authority and abused its discretion when it made a decision personal to the Sposatos."

For the reasons set forth in this opinion, we quash the judgment of the Superior Court. The record shall be remanded to the Superior Court with our decision endorsed thereon and with directions to remand the case to the Zoning Board of Review of the Town of Hopkinton.

**Facts and Travel**

On May 23, 2011, the Zoning Officer for the Town of Hopkinton issued a notice of violation to the Sposatos for their being in violation of the Hopkinton Zoning Ordinance by virtue of the fact that they had four alpacas on their property located at 129 North Road in that town; it is undisputed that the Sposatos had four alpacas on their property. The Sposatos' property is located in an R-1 zone, and it is approximately 45,000 square feet in size. Ms. Preston, the petitioner, resided in a single-family house at 131 North Road, which property abuts the Sposatos' property and is likewise located in an R-1 zone.

The Zoning Officer's notice of violation was predicated on his conclusion that alpacas are "farm animals" or "[l]ivestock" rather than "domestic animals"—the former being prohibited in an R-1 zone in Hopkinton and the latter being permitted in such a zone.

In due course, the Sposatos appealed the Zoning Officer's notice of violation to the Zoning Board, which conducted four hearings late in 2011 and early in 2012. Then, on February 9, 2012, the Zoning Board issued a nine-page decision. By a majority vote, it overturned the Zoning Officer's ruling and concluded that alpacas are "domestic animals." Immediately thereafter, however, and by a separate vote, the Zoning Board imposed four "conditions" on the

Sposatos with respect to the continued presence of alpacas on the property. [2]  Those conditions

read as follows:

> "1. The dimensional setbacks for an R-1 zone shall apply to the
> fencing and enclosures;
> "2. The alpacas are to be kept one hundred (100) feet from wells;
> "3. The number of alpaca shall not exceed four (4);
> "4. The right to keep alpaca on this property does not run with the
> land; that is, if the Sposato's [sic] sell this property the next owners
> are not permitted to keep alpaca."[3]

A justice of the Superior Court affirmed the Zoning Board's ruling in a written decision

that was filed on January 27, 2014.  Ms. Preston filed a petition for certiorari on May 6, 2014,

which this Court granted on April 17, 2015.

## II

## Standard of Review

In reviewing a case that is before us pursuant to a writ of certiorari, we will "limit our

review * * * [to] examining the record to determine if there are any errors of law."  Murphy v.

Zoning Board of Review of South Kingstown, 959 A.2d 535, 540 (R.I. 2008) (internal quotation

marks omitted).  This Court must "scour the record to discern whether any legally competent

evidence supports the lower tribunal's decision * * * ."  Id. (internal quotation marks omitted).

"If legally competent evidence exists to support that determination, we will affirm it unless one

---

[2]  We are aware that only three members of the five-member Zoning Board voted in favor of the motion whereby the four conditions were imposed upon the Sposatos; the other two members of the Board abstained.  It not being required that we do so in reaching our decision, we do not pass upon this voting procedure.

[3]  There is no need in the context of this case for us to comment on or review the first three conditions that were imposed upon the Sposatos.  See Grady v. Narragansett Electric Co., 962 A.2d 34, 42 n.4 (R.I. 2009) (referencing "our usual policy of not opining with respect to issues about which we need not opine").

or more errors of law have so infected the validity of the proceedings as to warrant reversal." Id. (internal quotation marks omitted).

## III

## Analysis

We need not discuss at any length the prolonged proceedings before the Zoning Board, which involved a good deal of witness testimony and disquisitions as to how alpacas should be classified under the Hopkinton Zoning Ordinance. The reason that we are free to pretermit such a discussion is that there is a glaring and fatal flaw in the Zoning Board's decision. In our judgment, the last of the four above-quoted "conditions" imposed upon the Sposatos by the Zoning Board is plainly inconsistent with venerable and settled principles in the law of land use.

The fourth condition explicitly provides that "[t]he right to keep alpaca on this property does not run with the land; that is, if the [Sposatos] sell this property the next owners are not permitted to keep alpaca." However, it is a basic principle that a zoning authority is not free to impose such a condition on the use of land. It is well settled that the law of zoning governs the use of the land itself, not those who occupy it.[4] Olevson v. Zoning Board of Review of Narragansett, 71 R.I. 303, 307, 44 A.2d 720, 722 (1945) ("[A zoning board] is concerned fundamentally only with matters relating to the real estate itself then under consideration and with the use to be made thereof, but not with the person who owns or occupies it.");[5] see also

---

[4]   "The question before the zoning board ought always to be: does the land in its physical surroundings justify the board in relaxing the zoning standards without regard to the individual who happens to be the owner? Any attempt to frame the question in terms of the identity and circumstances of the applicant makes zoning speak ad hominem rather than to the land and leads to arbitrary results not based on sound zoning principles." Note, The Ad Hominem Element in the Treatment of Zoning Problems, 109 U. Pa. L. Rev. 992, 1009 (1961).

[5]   A scholarly article in the North Carolina Law Review commented that "[t]he ruling by the Rhode Island Supreme Court in the case of Olevson v. Zoning Board of Review would

Reid v. Zoning Board of Appeals of Lebanon, 670 A.2d 1271, 1275 (Conn. 1996); French v. District of Columbia Board of Zoning Adjustment, 658 A.2d 1023, 1029 (D.C. App. 1995) (acknowledging that there is a "well-established principle that any conditions imposed on the granting of a variance, like the variance itself, must run with the land" and that "[p]ersonal conditions impermissibly regulate the business conduct of the owner, rather than the use of his property, and are unlawful per se") (internal quotation marks omitted);[6] City of Baltimore v. Poe, 168 A.2d 193, 195 (Md. 1961) ("It is settled law in this State that the zoning ordinance is concerned with the use of property and not with ownership thereof nor with the purposes of the owners or occupants."); Vlahos Realty Co. v. Little Boar's Head District, 146 A.2d 257, 260 (N.H. 1958) ("[Z]oning conditions and restrictions are designed to regulate the land itself and its use and not the person who owns or operates the premises by whom such use is to be exercised."); Dexter v. Town Board of Gates, 324 N.E.2d 870, 871 (N.Y. 1975) (noting that it is "a fundamental principle of zoning that a zoning board is charged with the regulation of land use and not with the person who owns or occupies it"); State ex rel. Parker v. Konopka, 200 N.E.2d 695, 696 (Ohio Ct. App. 1963) ("Zoning ordinances or regulations have reference to land use rather than to the persons who own the land."); see generally, 83 Am. Jur. 2d Zoning and Planning § 797 (2013).

---

probably be concurred in by most courts."  Phillip P. Green, Jr., The Power of the Zoning Board of Adjustment to Grant Variances from the Zoning Ordinance, 29 N.C. L. Rev. 245, 278 (1951). Then, after summarizing the facts at issue in that case, the article concluded: "This type of special treatment for an individual [as occurred in Olevson] rather than for the property involved was held by the court to be 'unreasonable' and beyond the power of the board."  Id.

[6]    We are well aware that the instant case does not involve the granting of a variance as such, but the principle that conditions must run with the land which has been articulated in variance cases is equally applicable to this case.

It is self-evident that the fourth condition imposed by the Zoning Board is completely inconsistent with principles articulated by this Court and so many others to the effect that a condition must run with the land and must not be limited to specific individuals.[7] For this reason, the Zoning Board's decision in this matter cannot stand; as was the case in Olevson, 71 R.I. at 307, 44 A.2d at 722, the presence of so flawed a condition requires that the decision of the respondent board be vacated.

## IV

### Conclusion

For the reasons stated herein, we quash the judgment of the Superior Court. The record shall be remanded to the Superior Court with our decision endorsed thereon and with directions to remand the case to the Zoning Board of Review of the Town of Hopkinton.

**Justice Goldberg, concurring in part and dissenting in part.** I concur with the majority's holding that the finding by the Superior Court justice affirming the fourth condition imposed by the Hopkinton Zoning Board of Review (the zoning board or the board) is erroneous and flies in the face of the fundamental purpose of a zoning board—oversight of "matters relating to the real estate itself then under consideration and with the use to be made thereof, but not with the person who owns or occupies it." Olevson v. Zoning Board of Review of Narragansett, 71 R.I. 303, 307, 44 A.2d 720, 722 (1945); see also Guiberson v. Roman Catholic Bishop of Providence, 112 R.I. 252, 260, 308 A.2d 503, 507-08 (1973); Guenther v. Zoning Board of Review of Warwick, 85 R.I. 37, 41-42, 125 A.2d 214, 217 (1956); Mastrati v. Strauss,

---

[7] The Zoning Board's fourth condition in effect granted a personal license to the Sposatos. See Olevson v. Zoning Board of Review of Narragansett, 71 R.I. 303, 307, 44 A.2d 720, 722 (1945).

75 R.I. 417, 419-20, 67 A.2d 29, 30-31 (1949); <u>Strauss v. Zoning Board of Review of Warwick</u>, 72 R.I. 107, 111, 48 A.2d 349, 352 (1946).[8] By its nature, a zoning board's imposition of conditions is limited to those that regulate land uses, irrespective of the landowner and his or her particularized use of the property—in this case the keeping of four alpacas on the property. <u>See</u> <u>Olevson</u>, 71 R.I. at 307-08, 44 A.2d at 722 (declining to sustain a condition imposed by the zoning board because the condition related to the landowner personally and not to the use of the land). Accordingly, I agree with the majority's rejection of the fourth condition; the imposition of which was a vast departure from the narrowly tailored authority of the zoning board when hearing an appeal from a decision of the zoning officer.

However, I part company with the majority based on its failure to address what I consider to be the central errors in the Superior Court decision—the Superior Court justice's conclusion that the keeping of alpacas is a permitted accessory use in an R-1 District, and the Superior Court justice's failure to address the board's finding that its decision applies only to the Sposato's alpacas and "does not consider all alpacas as domestic animal[s,] but only the ones in this particular case based on the evidence presented." By limiting its holding to condition number four, as set forth in the zoning board's approval, the majority leaves open the real possibility that the zoning board may, in the future, reissue its decision without the offending condition. Thus, this issue is not settled, and the Court's holding does not serve the parties, who may again be

---

[8] To be sure, this principle is often times stated in the context of variances or special-use permits. Such is the case because those forms of zoning relief are the primary platform by which a zoning board imposes conditions—considering that the applicant is requesting a deviation from the applicable zoning ordinance. A permitted use, on the other hand, concerns the literal interpretation of the zoning ordinance. Conditions are often ill-suited in the ambit of permitted uses as the particular use has already been deemed to be permitted, unfettered, and free from restrictions.

required, at great time and expense, to return to the zoning board and the Superior Court to relitigate the issues that were left unresolved in this case.

It is abundantly clear that the zoning board did not find that the keeping of four alpacas was a proper accessory use in an R-1 zone. Because the zoning board made no such finding, the decision of the Superior Court justice is clearly wrong. See Murphy v. Zoning Board of Review of South Kingstown, 959 A.2d 535, 540 (R.I. 2008) (stating that this Court will reverse a decision of the Superior Court when "it can be shown that the justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong" (quoting OK Properties v. Zoning Board of Review of Warwick, 601 A.2d 953, 955 (R.I. 1992))). Although the zoning board "did not specifically find that owning a pet is an accessory use," the Superior Court justice nonetheless concluded that the board's decision stemmed from the accessory-use clause. This error was further complicated by the Superior Court justice's conclusion that these particular alpacas, and not the universe of alpacas, fell within the accessory-use definition of the zoning ordinance. It is my opinion that the Superior Court justice compounded the egregious and indeed fatal error committed by the zoning board in issuing an alpaca-specific decision when he declared, in essence, that these alpacas are pets based on the subjective belief of their owner and the manner with which the animals are cared for by this particular family.

Turning to the findings of the zoning board, in approving motion 13, a majority of the board voted as follows:

> "To overturn the [z]oning [o]fficial's decision based on the testimony that was put before us that demonstrates that in this particular case that the Sposato's alpaca[s] are being housed and kept as domestic animals and treated as such. This [m]otion does not consider all alpaca[s] as domestic animal[s,] but only the ones

in this particular case based on the evidence presented."
(Emphasis added.)

This constitutes error as a matter of law. Any motion that rests on the particular animals that are the subject of the hearing—as opposed to the species of animal—cannot form the basis for a proper zoning decision. The decision failed to address whether all alpacas are permitted in an R-1 zone in the Town of Hopkinton (the Town), which was the core function of the board in approving or vacating the decision of the zoning official. Although one can shower an alpaca in love and affection, it is nonetheless an alpaca, a member of the South American camelid species. A permitted use, by its very nature, cannot vary based on particularized circumstances. By limiting its decision to the fourth condition set forth in the approval, the majority fails to address the more egregious error in this case and the glaring fact that the board failed to reach the seminal issue before it: Are alpacas domestic animals permitted in an R-1 zone?

I also note that the law is clear that not all flawed or illegal conditions imposed on a grant of approval by a zoning board necessarily mandate that the entire decision be vacated on remand. In the closely related context of variances and special-use exceptions, it is generally recognized that "illegal or unreasonable * * * conditions may be held void and set aside * * * where the condition held invalid is not deemed to be an essential or integral part of the zoning authority's decision." 3 Arden H. Rathkopf, The Law of Zoning and Planning, § 60.38 (2005) (emphasis added); see also Matter of Martin v. Brookhaven Zoning Board of Appeals, 825 N.Y.S.2d 244, 246 (N.Y. App. Div. 2006) (mem.) ("[I]f a zoning board imposes unreasonable or improper conditions, those conditions may be annulled although the variance is upheld." (quoting Matter of Baker v. Brownlie, 705 N.Y.S.2d 611, 614 (N.Y. App. Div. 2000) (mem.))); 8 Patrick J. Rohan, Zoning and Land Use Controls, § 40.03[3] (2015) ("Illegal conditions * * * are sometimes viewed as standing apart from the variance itself so that the variance may stand free

from the attempted condition. Such a result is correct if the variance would have been granted despite the condition."). This is problematic in the case at bar. The majority's decision mandates that the Superior Court remand this case to the board. What happens next?

Furthermore, in its findings, the board focused on the present use of the land—the keeping of these particular alpacas by this landowner, that is, the alpacas "in this particular case" are permitted, but no other alpacas. Condition four in the approval vote, on the other hand, relates to future uses of the property and declares that "[t]he right to keep alpaca does not run with the land." The board, in my opinion, inappropriately addressed future circumstances that may or may not come to pass and failed to decide the central question: Is the keeping of alpacas in an R-1 zone a violation of the Town's ordinances? I therefore am satisfied that condition four of the board's decision is neither essential nor integral to the overarching question of whether or not alpaca are domestic animals and, thus, a permitted use.

Finally, it should be noted that, because of the procedural posture of this case, the majority's reliance on <u>Olevson</u> is misplaced. <u>See</u> <u>Olevson</u>, 71 R.I. at 308, 44 A.2d at 722 (vacating a special exception granted by the zoning board because the offending condition placed on the grant was the "chief element and substantial basis" of the decision).

This case is before the Court on appeal from a determination of the Hopkinton Zoning Official, declaring that the housing of alpacas is not a lawful use of property in an R-1 zone. The majority's decision, therefore, serves to reinstate the zoning official's conclusion that alpacas are not permitted on the Sposato's property. Because the animals must now be relocated and the respondent landowner may seek another determination by the zoning board, I respectfully dissent.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Amber Preston v. The Zoning Board of Review of the Town of Hopkinton et al. |
| **Case Number** | No. 2014-127-M.P. (WC 12-151) |
| **Date Opinion Filed** | February 27, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Petitioner: George A. Comolli, Esq. For Respondent: Michael Polak, Esq. Kevin McAlister, Esq. |